**NATIONAL LABOR RELATIONS BOARD
v. DON JUAN, Inc., et al.**

**No. 52, Docket 21405.**

United States Court of Appeals
Second Circuit.

Argued Nov. 9, 1949.

Decided Dec. 9, 1949.

David P. Findling, Associate General Counsel; A. Norman Somers, Associate General Counsel; Frederick U. Reel and Thomas F. Maher, Washington, D. C., attorneys, for National Labor Relations Board, Petitioner; Frederick U. Reel, Washington, D. C., counsel.

Friedman & Friedman, New York City, Attorneys for Don Juan, Inc., and Don Juan Co., Inc., Respondents; Hyman R. Friedman, New York City, counsel.

Arnold Cohen, New York City, attorney and counsel for Hair Goods Toiletries and Accessories Workers' Union No. 21906, A. F. L., Intervenor.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit judge.

This is a proceeding to review a decision of the National Labor Relations Board. It found that Don Juan, Inc. and Don Juan Co., Inc., were both employers of Ramona Wilkinson and Penny Holmes, and had unlawfully discharged them on the ground that they had ceased to be members in good standing of the A.F.L. Union of which they had been members, and which was the bargaining representative of the employees of the respondents. Upon the above finding, the Board entered an order against the respondents requiring them to cease and desist from their alleged discriminatory practices and directing reinstatement of Ramona Wilkinson together with compensation for any loss of pay she may have suffered. The order further directed that Penny Holmes be made whole for any loss of pay she may have suffered, but did not require her reinstatement because she had obtained another "job and [was] perfectly satisfied with" it.

The enforcement petition is opposed and sought to be dismissed by the employers on the ground that Wilkinson and Holmes had entered into a closed shop agreement with the employer. It is argued that under such circumstances there was no unfair labor practice in discharging them since they had ceased to be members in good standing of the A.F.L. Union because of their activities on behalf of a C.I.O. Local and their attempts to have it made the bargaining representative of the employees.

On or about October 9, 1946, the employer received a letter from the A.F.L. reading as follows:

"Please be advised that Ramona Wilkinson and Pennie Holmes have been temporarily suspended from the above Union, and therefore are no longer members of the Union in good standing. Consequently we must ask you, under the terms of the contract that is existing between your company and the Union, to discharge them immediately.

"Failure to do so will be construed by our Union as a breach of contract and we will be compelled to take action against your company which we sincerely hope will not be necessary."

Shortly after the receipt of the above letter Holmes and Wilkinson were dismissed by their employer, Holmes being informed by the A.F.L. Union in writing that she was charged with "creating dissension amongst the workers in endeavoring to organize dual unionism" and would be "advised by the Executive Board as to date and place of trial." Wilkinson received a letter from her employer (enclosing a copy of the A.F.L.'s letter to the respondent) reading as follows:

"This is to inform you that, in view of the attached copy of the Union letter of October 8, 1946, we are forced to suspend your services temporarily.

"Enclosed please find check for $9.15 covering final wages due you for Oct. 7th and 8th."

The question for this court is whether Wilkinson and Holmes had through their collective bargaining agent entered into an agreement with the respondents which would preclude their becoming active on behalf of a C.I.O. Local Union during the pendency of that agreement; in other words, whether they were parties to a closed shop agreement. The Board and the trial examiner found that the contract between the A.F.L. Union and the respondents did not require membership in the union as a condition of employment and did not, therefore, justify the discharges. The Board also found that "union security provisions relied upon in justification for discharges must be expressed in clear and unmistakable language"; and that "there is no such obvious language in the contract, and the interpretation of the parties is not a substitute therefor."

There may have been clauses in the contract tending to show that it was a closed shop agreement. But there is nothing definitely so stating and the provisions in Article Sixth giving "all employees" vacation privileges, and in Article Fifth giving full wages for holidays to "all members

of the Union of good standing" would seem to indicate the existence of employees covered by the contract who were not required to be members of the union. Article Seventh of the contract provides that: "All workers after a trial period of four (4) full weeks shall be considered regular employees who shall have all the rights and privileges of this agreement." This clause nowhere provides for a closed shop or eliminates the distinction between employees in general and members of the union, a distinction made by the other articles we have referred to in dealing with specific rights under the contract. Moreover, the check-off relating to union dues required the employer to check-off such dues only in the case of employees who were members of the Union. From this it may also reasonably be inferred that there would be employees covered by the agreement who were not members of the Union and, therefore, that the contract was not for a closed shop.

■ In the view most favorable to the employer's contentions, the contract is ambiguous as to whether a closed shop was in contemplation of the parties, and so the Board held. In these circumstances, the proviso of Section 8(3) of the Wagner Act[1] claimed to be applicable here, cannot be invoked since there has been no sufficient showing that there was a contract for a closed shop. If no agreement for a closed shop was made the Board was justified in its conclusion that the discharge of Wilkinson and Holmes for their activity in C.I.O. organization was a discriminatory practice in violation of Section 8 (3) of the Wagner Act. The proviso in Section 8(3) follows a prohibition of employer discrimination, and one seeking to

come within the exception must clearly comply with its terms. NLRB v. Electric Vacuum Cleaner Co., 315 U.S. 685, 694, 62 S.Ct. 846, 86 L.Ed. 1120; Hartford Electric Light Co. v. Federal Power Commission, 2 Cir., 131 F.2d 953, 963, certiorari denied 319 U.S. 741, 63 S.Ct. 1028, 87 L.Ed. 1698.

■ In M. & M. Woodworking Co., 6 NLRB 372, 383; McKesson & Robbins, Inc., 19 NLRB 778, 800; and Smith Wood Products, Inc., 7 NLRB 950, 957, the National Labor Relations Board, because the legal rights of the parties were doubtful and the employer had acted in good faith, declined to order back pay though it did require reinstatement. In the case at bar the Board found that the labor relations contract was ambiguous, but made no finding as to whether the respondents acted in good faith in discharging Wilkinson and Holmes. It does not appear from the record whether the Board considered the question of good faith at all, or whether, if the discharge were thought to have been in good faith, it intended to depart from what seems to have been its practice in refusing to order back pay in such a situation. We think that there should be findings in respect to the question of good faith and a clear indication of the policy which the Board determines to exercise in the particular circumstances. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271. We cannot say, without complete findings by the Board, that it would not be an abuse of discretion to order back pay in the present case.

■ The holding that the two respondents were engaged in a single enterprise and were equally liable for any unfair labor practices is supported by the record and should, therefore, stand. NLRB v.

---

[1]. "It shall be an unfair labor practice for an employer—

* * * * * * *

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothin this Act, * * * as amended from time to time, or in any code or agreement approved or prescribed thereunder, or in any other statute of the United States,

shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this Act as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 9 (a), in the appropriate collective bargaining unit covered by such agreement when made." 49 Stat. page 452, 29 U.S.C.A. § 158(3).

Condenser Corp., 3 Cir., 128 F.2d 67; NLRB v. Federal Engineering Co., 6 Cir., 153 F.2d 233.

The petition to enforce is granted except in so far as it relates to the award of back pay. The proceeding is remanded to the Board for further consideration of that question upon the present record and any other competent evidence that may be adduced.