180 F.2d 445
 NATIONAL LABOR RELATIONS BOARD
v.
C. W. HUME CO. et al. (INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF
AMERICA, A.F.L. et al. Intervenors).
 No. 11693.
 United States Court of Appeals Ninth Circuit.
 Feb. 24, 1950.
Rehearing Denied March 31, 1950.
 
 David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Marcel Mallet-Prevost, Attorney, NLRB, Washington, D.C., for petitioner.
 J. Paul St. Sure and Edward H. Moore, Oakland, Cal., for respondent.
 Tobriner & Lazarus, Mathew O. Tobriner and Stanley Neyhart, San Francisco, Cal., for intervenors.
 Before MATHEWS, HEALY, and POPE, Circuit Judges.
 HEALY, Circuit Judge.
 
 
 1
 This is a companion case to N.L.R.B. v. Flotill Products, Inc., 9 Cir., 180 F.2d 441. The general background of the two cases is identical but there are material differences in matters of detail.
 
 
 2
 Unlike Flotill, respondent Hume Company was a member of the California Processors & Growers, Inc., hence its bargaining relations with the AFL, prior at any rate to March 1946, were governed entirely by the Master agreement long in effect between the associated employers and that union. Under the terms of the Master agreement the AFL was the exclusive bargaining representative of Hume's employees as of those of all association members. As last amended that agreement was to run until March 1, 1945 and was thereafter to continue automatically from year to year subject to modification or termination upon notice by any part thereto. The Master agreement provided for preferential hiring, but as interpreted by the Board it did not provide for a closed shop. Hume does not dispute the Board's interpretation of it. The AFL, which was permitted to intervene, contends that by custom and usage the contract should be considered as providing a closed shop; but there appears to be little substance to the contention, and the Board on ample evidence found the contrary to be the case.
 
 
 3
 In the summer of 1945 considerable discontent developed among Hume's employees because of a proposed transfer of jurisdiction over the local union from the AFL itself to the Teamsters, one of AFL's international brotherhoods. About the same time the CIO petitioned the board for a representation election, and the Board directed that an election, scheduled for October, be held throughout the industry-wide bargaining unit. In an effort to halt a drift of its membership to the rival union the AFL brought pressure to bear upon Hume to give the preferential hiring section of the Master agreement the force and effect of a closed-shop provision. Hume resisted the pressure for a time, but in November 1945 the AFL cut off all spinach deliveries to the cannery and informed the management that no further deliveries would be made until certain named employees were discharged, this action being followed up by the placing of a picket line around the cannery and the consequent exclusion of incoming trucks. Hume was given a list of employees whose discharge was demanded on the ground that they had been suspended from the AFL for nonpayment of dues. Hume at that time capitulated and discharged a total of 29 employees for failure to maintain AFL membership.
 
 
 4
 In February 1946 the Board set aside the October election as inconclusive and announced its intention of holding another election or elections at an early date, serving on all employers the admonition quoted in the Flotill opinion. In the interim, on March 25, 1946, Hume executed a brief memorandum agreement with the AFL requiring that all present employees become members of the union within 10 days and thereafter remain members in good standing, and that new employees should join within 10 days of their commencing work and remain members as a condition of their continued employment.
 
 
 5
 On complaint of the CIO charging Hume with unfair labor practices, there was a Board hearing which terminated on October 31, 1946 in the issuance of an order predicated upon findings that Hume had by its conduct interfered with, restrained and coerced its employees in the exercise of their rights, within the meaning of Sec. 8(1) and (3) of the Act, 29 U.S.C.A. § 158(1,3). The order required that Hume cease and desist (a) from recognizing the AFL as the exclusive representative of its employees for the purpose of collective bargaining unless and until the union shall have been certified by the Board as the exclusive representative; (b) from giving effect to the closed-shop contract of March 25, 1946 until such certification; and (c) from discouraging membership in the CIO, or encouraging or discouraging membership in any other labor organization by discharging or refusing to reinstate any of its employees, or by other discriminatory practices. Hume was directed to take affirmative action to carry the order into effect and to reinstate with back pay the 29 employees discharged for failure to maintain AFL membership. Petition to enforce this order was filed with the court July 23, 1947 but was not brought on for hearing until 1949. In the interim, as noted in the Flotill opinion, the Board dismissed in their entirety the representation proceedings.
 
 
 6
 In the absence of an agreement clearly providing for a closed shop the Board was justified in its conclusion that Hume's discharge of the 29 employees on demand of the AFL was a discriminatory practice in violation of Sec. 8(3), and that corrective action is requisite. N.L.R.B. v. Electric Vacuum Cleaner Co., 315 U.S. 685, 694, 62 S.Ct. 846, 86 L.Ed. 1120, N.L.R.B. v. Don Juan, Inc. 2 Cir., 1949, 178 F.2d 625. Compare Colgate-Palmolive-Peet Co. v. N.L.R.B., 338 U.S. 355, 70 S.Ct. 166. For reasons given in the Flotill case, supra, we are of opinion that order (a) above, requiring Hume to cease and desist from recognizing the AFL as the exclusive bargaining representative of its employees unless and until the union shall have been certified by the Board, is not in the existing circumstances action of a nature calculated to effectuate the purposes of the Act. Whether or not the order was within the authority of the Board in the conditions existing at the time of its issuance we need not decide.
 
 
 7
 Subdivision (b) of the order, supra, requiring Hume to cease giving effect to the closed-shop contract of March 25, 1946, or to any extension or renewal thereof, presents a more difficult problem. The inauguration of that contract while the representation proceeding was pending did not stand alone. It was part of a general course of conduct on Hume's part tending to lend aid and assistance to the AFL. Aside from the numerous discharges of employees at the instigation of that union, the Board found that after March 1, 1946 Hume permitted AFL representatives free access to the cannery for the purposes of collecting dues and soliciting memberships while at the same time denying like privileges to representatives of the CIO. Hume does not dispute the finding. In light of this pattern of discriminatory conduct we are unable to say that the Board's order relative to the closed-shop addenda to the existing contract should not at this juncture be enforced.
 
 
 8
 The Board's order will therefore be modified by setting aside the provision denominated (a) above. As so modified the order will be enforced by the usual decree.