**STEWART–WARNER CORP. v. NATIONAL LABOR RELATIONS BOARD.**

**LOCAL 1031, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, A. F. OF L. v. NATIONAL LABOR RELATIONS BOARD.**

Nos. 6299, 6353.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 3, 1952.

Decided Feb. 5, 1952.

Frank B. Gilmer and George B. Christensen, Chicago, Ill. (Neal J. McAuliffe, Chicago, Ill., Thomas B. Gay, Richmond, Va., Winston, Strawn, Black & Towner, Chicago, Ill., and Hunton, Williams, Anderson, Gay & Moore, Richmond, Va., on brief), for Stewart-Warner Corp.

Joseph M. Jacobs, Chicago, Ill. (Alfred Kamin, Chicago, Ill., on brief), for Local 1031, etc., A. F. of L.

Duane Beeson, Attorney, National Labor Relations Board, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and Bernard Dunau, Attorney, National Labor Relations Board, all of Washington, D. C., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are petitions to set aside an order of the National Labor Relations Board directing the Stewart-Warner Corporation to cease and desist from recognizing Local 1031 International Brotherhood of Electrical Workers (IBEW), A. F. of L., as bargaining agent of its employees or from interfering in any way with the right of self organization on their part. Petitions are filed both by the company and the union named, but as we are of opinion that the order should be set aside on the company's petition, we need not pass upon interesting questions raised by the petition of the union.

An election to determine the bargaining representative of the employees of the company was held under the Board's direction and supervision on July 7, 1949. At this election the IBEW obtained a majority of the votes cast but certification was withheld because of charges of unfair labor practices filed immediately after the election by certain individuals who were members of the United Electrical, Radio and Machine Workers of America, Local 1154, hereafter called the UE, which was alleged to be communist dominated and which had not filed the non-communist affidavits required by the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq. It was contended by the company that the individuals who filed these charges were acting in behalf of the non-complying union in an attempt to evade the provisions of the act. The Board did not pass upon this contention or upon the charges made by these individuals, but based its findings of unfair labor practices upon charges filed by the International Union of Electrical, Radio and Machine Workers, hereafter called the IUE, a CIO union organized when the UE was expelled from the CIO on account of its communist connections. The charges of the IUE were filed with the Board on December 30, 1949, and copy thereof was served on the employer January 3, 1950. The Board based its findings exclusively on matters occurring within the six months limitation period prior to that date. The Board said: "We base this finding only upon those activities of Respondent, as set forth in the Intermediate Report, that occurred on and after July 3, 1949; i. e., those activities falling within 6 months of January 3, 1950, when a copy of the charge filed by the IUE was served on the Respondent. These activities included a threat of disciplinary action to an employee to induce her to sign the IBEW petition, a threat to another employee of loss of job security if she did not vote for the IBEW, the denial to UE adherents of the right previously granted the IBEW, to circulate petitions, the posting of a notice of an IBEW meeting, the recall of a laid-off employee for the purpose of assisting the IBEW, and the grant of recognition to the IBEW despite

the Board's refusal to certify that organization."

One member of the Board dissented, pointing out that the IBEW had received a majority of the votes cast in the election held by the Board, that certification of that union had been withheld only because of the charges filed by individuals in July, that the Board had ignored all of those charges except as to matters occurring subsequent to July 3, and that the matters occurring after that date did not furnish sufficient basis for the order. He said:

"On January 31, 1950, the Respondent recognized the IBEW as the bargaining representative of its production and maintenance employees. By thus recognizing the IBEW while a question concerning the representative status of the union was pending before the Board, the Respondent was incurring the risk that its act of recognition would be an unfair labor practice in the event the Board later sustained the charges in Case No. 13–CA–306. However, the majority of the Board in reaching their decision herein now decides that they will not rely upon any evidence which is dependent for its admissibility upon the charges in Case No. 13–CA–306. Thus, the Board's decision in this case establishes, in my opinion, that no genuine dispute as to the representative status of the IBEW existed at any time after the July 7, 1949, election. Accordingly, the Respondent by recognizing the IBEW in January 1950 did not commit any unfair labor practices.

"Because I believe that, in the circumstances of this case, the Respondent was justified, without violating the Act, in recognizing the IBEW in January 1950, I also believe that the Respondent's other post-election conduct being consistent with such recognition likewise did not violate the Act. The two remaining activities, relied upon by my colleagues in finding that the Respondent herein has committed unfair labor practices, occurred before the election. I consider these two acts of alleged assistance to the IBEW as being too insubstantial upon which to base a finding of unfair labor practices. Accordingly, I

would dismiss the complaint herein in its entirety."

We agree with the dissenting member. There is much evidence in the record of assistance given by the company to the IBEW prior to July 3, 1949; but the Board did not base its findings on these matters but on what occurred subsequent to July 3, and we think that this was manifestly insufficient to support the finding.

 The first two matters mentioned by the Board require but brief notice; for, as pointed out by the dissenting member, they are too insubstantial to support a finding of unfair labor practice. Furthermore, they occurred before July 3. They relate to allege pressure brought to bear upon employees Loduigowski and Knapowski to induce them to support the IBEW; but both of these employees signed a petition supporting the IBEW which was published in the plant newspaper on July 1, and the pressure relied on, if it was exercised, must have occurred prior to that date. Two other matters mentioned by the Board may be dealt with briefly, one was the posting of a notice of an IBEW meeting on the bulletin board, the other the reemployment of one Vivian Miller. At the time of the posting of the notice of the meeting, the IBEW had been chosen in the election as the bargaining representative of the employees and the Board had denied a petition to attack the election proceedings. To permit the use of the bulletin board by the IBEW under such circumstances could not be condemned as unfair. The Vivian Miller incident amounted to no more than giving one day's work to an employee who claimed to have been laid off unjustly. The mere fact that this employee had been circulating a petition for the IBEW is no sufficient basis for condemning this as discrimination.

 The Board based its action in part upon a finding that the company denied to UE adherents the right to circulate petitions on company property when such right had previously been accorded to the IBEW. The evidence as to this matter is conflicting, but it appears that if there was such a denial to UE adherents, it oc-

curred immediately after the election, when these members of the non-complying communist infiltrated union were circulating petitions asking the Board to hold invalid the election which had been held and in which the UE had opposed representation by the IBEW. In other words, officials of this non-complying union, who were charged with using it as an organization of the communist party, were seeking in their individual capacities to present its cause before the Board and invoke Board action with respect to a controversy to which it was a party. They were thus seeking to do indirectly what the law forbade being done directly. Nothing of this sort was involved in the petitions which the IBEW was allowed to circulate; and there was consequently no basis for a finding of discrimination in this regard. Nor did the denial constitute of itself an unfair labor practice. There is nothing in the Labor Management Relations Act which requires an employer to permit his premises to be used by employees for activities in contravention of the spirit and purpose of the act. The company was under no obligation to recognize or deal with the UE even if it had obtained a majority and, a fortiori, was under no obligation to permit adherents of the UE to use its premises to foment discord and dissatisfaction among the other employees in carrying on a campaign in behalf of the UE. We do not think that the denial of the right to circulate the petitions, if there was such denial, amounted to an unfair labor practice under the circumstances here existing, and certainly such denial was not a sufficient basis for the Board's order. The petitions were in fact circulated and presented to the Board but the Board refused to take action on them in the representation proceeding.

█ And there is no basis for finding an unfair labor practice in recognizing the IBEW as bargaining agent. Such recognition was not extended until the company had been satisfied by a count made by an impartial person, a Chicago police captain, that at the time of recognition it represented a majority of the employees. The IBEW was not a company organized or company dominated union. It was affiliated with the American Federation of Labor and had been selected by a majority of the employees in a secret election conducted by the Board. The Board had withheld certification only because of the pendency of the unfair labor charges filed by adherents of the UE. The company in deference to this action of the Board withheld recognition for more than six months and then accorded recognition only after independent proof had been furnnished that the union represented a majority of the employees then working. Assuming that the assistance given the IBEW by the company was sufficient to invalidate the election held by the Board, there is no reason to hold the company guilty of an unfair labor practice in dealing with a representative subsequently found to represent a majority of the employees. The assistance given the IBEW in the election, while it may have invalidated the election, did not disqualify the IBEW as a bargaining representative, if it did in fact represent a majority of the employees.[1]

It must be remembered that at the time of the company's recognition of the IBEW, there was no bargaining representative certified by the Board, that the IBEW was claiming to represent the majority of the company's employees and that the company had satisfied itself that the claim was true. Under such circumstances, there could be no unfair labor practice in recognizing the representative of the majority. On the contrary, it was the duty of the company to deal with the representative when this majority status was established. N. L. R. B. v. Thompson Products, 6 Cir., 162 F.2d 287, 293; N. L. R. B. v. C. W. Hume Co., 9 Cir., 180 F.2d 445; Matter of Tennessee Knitting Mills, 88 N.L.R.B. 1103.

1. The case is not one where the recognition might be forbidden to dissipate the effect of an unfair labor practice; for, as we have seen, there was no evidence that the election was affected by any un-fair labor practice occurring subsequent to July 3, and the Board has excluded from consideration any unfair labor practice occurring prior to that date.

Much of the argument before us has related to matters that occurred prior to July 3, 1949. The Board points to assistance given by the company to the IBEW during this period and argues that this was such interference with the right of the employees to self organization as to render invalid the election at which the IBEW was chosen as bargaining representative. The company argues, on the other hand, that in the UE it was dealing with a union which was a mere front for the communist party and was a constant source of danger to its business and says that it was justified in favoring the IBEW as a means of getting rid of this communist menace. We do not find it necessary to pass upon the questions thus presented for the reason that the Board's action was based, not on what occurred before July 3, 1949, but only on what occurred after that date. What occurred before July 3 might serve as a basis for holding the election void; but, as we have seen, the recognition of the IBEW was based not on the election but on an independent determination of majority subsequently made upon petitions with which, as the special examiner found, the company management had no connection. It would not constitute an unfair labor practice to recognize the representative of a majority of the employees, even though the election was invalid.

If the IUE can muster a majority of the employees at the company's plant, it can have an election called for determining that fact and can have itself certified as bargaining representative instead of the IBEW. We see no reason to disrupt the bargaining which is now going peacefully forward between the company and the IBEW on the basis of arguments grounded on UE charges which the Board itself has declined to consider; and this is what the enforcement of the Board's order would mean, whatever sophistry might be adduced to the contrary.

The order of the Board will be set aside on the company's petition. The petition of the IBEW will be dismissed.

No. 6299, order set aside.

No. 6353, petition dismissed.