234 F.2d 565
 DISTRICT 50, UNITED MINE WORKERS OF AMERICA, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
PITTSBURGH VALVE COMPANY, Sterling Manufacturing Company, and Hardware Brass Manufacturing Company, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 7107.
 No. 7122.
 United States Court of Appeals Fourth Circuit.
 Argued April 20, 1956.
 Decided June 5, 1956.
 
 E. Crampton Harris, Birmingham, Ala. (Yelverton Cowherd and Alfred D. Treherne, Washington, D. C., on brief), for Dist. 50, United Mine Workers of America.
 Earle K. Shawe and Sidney J. Barban, Baltimore, Md. (William J. Rosenthal, Baltimore, Md., Lacy I. Rice, Martinsburg, W. Va., and Benjamin G. Reeder, Morgantown, W. Va., on brief), for Pittsburgh Valve Co. and others.
 Elizabeth W. Weston, Attorney, National Labor Relations Board, Washington, D. C. (Theophil C. Kammholz, General Counsel, David P. Findling, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Maurice Alexandre, Attorney, National Labor Relations Board, Washington, D. C., on brief), for respondent.
 Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.
 PARKER, Chief Judge.
 
 
 1
 These are petitions to review and set aside an order of the National Labor Relations Board which found three manufacturing corporations at Reedsville, West Virginia, guilty of an unfair labor practice in bargaining with District 50, United Mine Workers of America, and directed them to cease and desist from such bargaining unless and until that organization should be certified by the Board as the bargaining representative of their employees. The employers have filed a petition for review denying that they were guilty of any unfair labor practice and claiming that District 50 had been chosen as bargaining representative by their employees. District 50 has filed a petition for review contending that the order was improper, not only because District 50 had been chosen as the bargaining representative of the employees, but also because the effect of the order was to preclude District 50 from ever acting as their bargaining representative, since it could not be certified by the Board by reason of its parent union, the United Mine Workers of America, not having complied with the filing provisions of the Labor Management Relations Act of 1947, sec. 9(f), (g) and (h), 29 U.S.C.A. § 159(f), (g) and (h).
 
 
 2
 The facts are fully set forth in the decision of the Board and the report of the Trial Examiner. Those necessary to an understanding of the questions involved may be stated briefly as follows: The three Reedsville corporations (Pittsburgh Valve Company, Sterling Manufacturing Company and Hardware Brass Manufacturing Company) are closely affiliated with two corporations at Morgantown, W. Va. (Sterling Faucet Company and Sterling Tubular Products, Inc., formerly known as Sa-Mor Quality Brass, Inc.). The plants of the Reedsville corporations are only thirteen miles distant from those of the Morgantown corporations. All five are engaged in the manufacture of plumbers' supplies and are operated under common ownership, management and control as an integrated enterprise. The oldest and largest of these corporations is Sterling Faucet at Morgantown, which was organized in 1940, and in 1953 had 571 employees. Sterling Tubular Products at Morgantown was organized in 1948, and in 1953 had 87 employees. The three Reedsville companies were organized in 1952, and in 1953 had a total of 62 employees.
 
 
 3
 District 50 began representing the employees of Sterling Faucet in 1945. In 1950 it was recognized as the bargaining representative of the employees of Sterling Tubular, then known as Sa-Mor, the other Morgantown company. Two other unions, the Plumbers and the Steelworkers, sought to represent the employees of these two Morgantown plants and the Board found that they constituted an appropriate bargaining unit and ordered an election in the two plants. Sa-Mor Quality Brass, Inc., 93 N. L. R. B. 1225. The election was held in April 1951, with indecisive results. Following this election, District 50 continued to represent the employees of both Morgantown companies as bargaining agent.
 
 
 4
 In 1952 the owner of the Morgantown companies expanded his business by organizing the three Reedsville companies to operate in Reedsville, thirteen miles away. Shortly after their organization, the Steelworkers Union petitioned for a representation election for the employees in the plants of these three companies. The Reedsville companies answered that the only appropriate bargaining unit was one which embraced the employees of all five companies, i. e. those at Morgantown as well as those at Reedsville, but that, if the unit was to consist of the three Reedsville companies alone, the holding of an election would be untimely because the Reedsville plants were still in process of expansion and did not yet have either a substantial or a representative group of their contemplated working force or job classifications. The Board dismissed this petition on July 13, 1953. 106 N. L. R. B. 109.
 
 
 5
 With respect to the appropriateness of the bargaining unit the Board said in its order of dismissal: "There is no question, and all of the parties seemingly agree, that absent extraordinary circumstances, the integrated character of the operations and management of the five plants owned by these companies would require a finding that only a single bargaining unit for all five plants of the five separate corporations is appropriate." The Board pointed out, however, that there was a conflict between the parties, not only as to the appropriateness of the five plant unit, but also as to whether under the Waterous Company case, 92 N. L. R. B. 76, the employees of the Reedsville plants should be polled as a separate group. Holding that it was unnecessary to decide this dispute as the petition would be dismissed on the ground that the Reedsville plants were in process of expansion, the Board dismissed the petition "without prejudice to the subsequent filing of another petition at a more appropriate time". The ground of dismissal was thus stated:
 
 
 6
 "Accordingly, because the unit requested is in the process of definite and imminent substantial expansion, we shall dismiss the petition without prejudice to the subsequent filing of another petition at a more appropriate time."
 
 
 7
 On August 11, 1953, the Steelworkers filed another representation petition limited to the Reedsville plants, which the Reedsville companies opposed on the ground that these plants were still in process of expansion. Counsel for the companies called attention, in a letter of August 17 to the Field Examiner of the Board, to the fact that, despite pressure by District 50 to have the Reedsville companies included in the existing agreement with the Morgantown companies, no such agreement or understanding had been "formally or informally reached." This statement was reiterated in a letter of August 21, in which, however, the statement was made that due to pressure for recognition by District 50 a card check had been conducted by an impartial arbitrator, who reported that District 50 represented a majority of the employees. On September 4 the petition was dismissed by the Regional Director and appeal from the dismissal was taken to the Board. On September 17, counsel for the companies in a letter to the Board stated that there had been no change in the expansion policies of the companies and that the expansion program was moving forward. In this letter he called attention to the fact that under the Board's prior decision the question as to whether the three Reedsville companies were but a part of a larger unit comprising the Morgantown companies "still remains to be disposed of". On October 20, the Board affirmed the dismissal on the ground that there had been no change in the employer's plant of expansion and that the petition was premature for the reason that the prior petition had been held to be premature.
 
 
 8
 On November 2, the Reedsville companies with the Morgantown companies entered into an agreement with District 50, extending to the Reedsville companies the collective bargaining agreement theretofore existing between District 50 and the Morgantown companies and constituting District 50 the exclusive bargaining representative of the employees in all five plants. The employers had resisted this recognition of District 50 as bargaining representative for the employees of the Reedsville companies but had entered into it after pressure and threat to strike on the part of District 50. Before making the agreement they had had a card check made by a disinterested arbitrator, who reported that District 50 had the support of a clear majority of the employees in the five plants taken as one unit and also a clear majority of the employees of the three Reedsville plants. He reported that 45 of the 62 employees in the Reedsville plants and 621 of the 718 employees in all five plants supported District 50. The companies offered to prove that the Steelworkers did not have more than four supporters in all of the plants, that they represented no employees, and that they had held no meetings in the Reedsville area; but this testimony was excluded by the Trial Examiner. Petitions signed by 50 of the employees of the Reedsville companies stating that they had chosen District 50 as bargaining representative were also offered in evidence and were rejected. The petition of Steelworkers filed on August 11, 1953 stated that there was not then in existence any local union of Steelworkers in the Reedsville plants which "has or will have" any employees of the companies there; and no list of members desiring representation by Steelworkers was attached to its petition. The Board did not request or obtain a payroll upon which to make a card check to determine whether the Steelworkers had such an interest as would entitle it to have its petition processed.
 
 
 9
 No expansion of the Reedsville plants had taken place in 1953, although expansion had taken place in the Morgantown plants; and in the spring of 1954 expansion of the Reedsville plants was definitely abandoned.
 
 
 10
 Complaint was filed September 2, 1954 charging the Reedsville companies with unfair labor practice in recognizing District 50 as bargaining agent of their employees in the face of a conflicting claim of representation by the Steelworkers in violation of section 8(a) (1) and (2) and section 2(6) and (7) of the Labor Management Relations Act. 29 U.S.C.A. §§ 158(a) (1, 2), 152(6, 7). A hearing was had before a Trial Examiner, who recommended that the petition be dismissed on the ground that the three Reedsville plants did not constitute an appropriate bargaining unit and that consequently the Steelworkers' petition did not present a true question concerning representation. The Board, without finding whether District 50 did or did not represent a majority of the employees either in the five plant unit or in a unit composed of the three Reedsville plants, and without determining whether the proper bargaining unit for the Reedsville plants should be composed of those three plants or of the five plants including the Morgantown plants, found the Reedsville companies guilty of the unfair labor practice charged on the ground that the Reedsville plants could compose an appropriate bargaining unit and that District 50 had been recognized before the Board had passed on that question and while claim to represent the employees in the Reedsville plants was being made by the Steelworkers.
 
 
 11
 It is perfectly clear that the determination of the appropriate bargaining unit was a matter for the decision of the Board. It is also clear that the Board was not bound by the statement made in its prior decision as to the appropriateness of the five plant unit. Not only was the dismissal of the prior petition not based on that ground, but also it is well settled that the principle of res judicata has no application to such action of administrative agencies. N. L. R. B. v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, 54-55; Wallace Corporation v. N. L. R. B., 4 Cir., 141 F.2d 87, 91, affirmed 323 U.S. 248, 253, 65 S.Ct. 238, 89 L.Ed. 216. Se also Pacific Greyhound Lines, 9 N. L. R. B. 557, 573.
 
 
 12
 It is clear, also that, under the circumstances above set forth, the Board would be justified in holding it an unfair labor practice to recognize District 50 as the bargaining representative of the employees of the Reedsville companies, if there were any real question as to District 50 representing a majority of such employees. It would not be an unfair labor practice, however, to recognize District 50 as the bargaining representative of these employees if there was no real question as to its representing a clear majority, whether judged with respect to the three plant or the five plant unit. An employer should not aid one of two competing unions by giving the weight of his recognition to one of them while a real question of representation is pending before the Board. Midwest Piping & Supply Co., 63 N. L. R. B. 1060. And we think the same principle applies even though a petition for representation has been dismissed without prejudice as premature, as in this case, if any real question remains as to which union represents a majority. See N. L. R. B. v. Indianapolis Newspapers, Inc., 7 Cir., 210 F.2d 501. If, however, there is no such question, there is no basis for holding an employer guilty of an unfair labor practice in recognizing as bargaining agent a union which represents a clear majority of his employees. We think the Board should have gone into this question and found the facts with regard thereto.
 
 
 13
 A case very much in point is our decision in Stewart-Warner Corporation v. N. L. R. B., 4 Cir., 194 F.2d 207, 210, in which there had been recognition of a union representing a majority of employees, notwithstanding refusal by the Board to certify it as bargaining representative pending investigation of alleged unfair labor practices. In setting aside an order of the Board holding the employer guilty of an unfair labor practice in recognizing the union, we said:
 
 
 14
 "Assuming that the assistance given the IBEW by the company was sufficient to invalidate the election held by the Board, there is no reason to hold the company guilty of an unfair labor practice in dealing with a representative subsequently found to represent a majority of the employees. The assistance given the IBEW in the election, while it may have invalidated the election, did not disqualify the IBEW as a bargaining representative, if it did in fact represent a majority of the employees.
 
 
 15
 "It must be remembered that at the time of the company's recognition of the IBEW, there was no bargaining representative certified by the Board, that the IBEW was claiming to represent the majority of the company's employees and that the company had satisfied itself that the claim was true. Under such circumstances, there could be no unfair labor practice in recognizing the representative of the majority. On the contrary, it was the duty of the company to deal with the representative when this majority status was established. N. L. R. B. v. Thompson Products, 6 Cir., 162 F.2d 287, 293; N. L. R. B. v. C. W. Hume Co., 9 Cir., 180 F.2d 445; Matter of Tennessee Knitting Mills, 88 N.L.R.B. 1103."
 
 
 16
 In point, also, is the decision of the Court of Appeals of the Seventh Circuit in N. L. R. B. v. Indianapolis Newspapers, Inc., supra, 210 F.2d 501, 503, in which there had been recognition of one of two competing unions based on a card check, without awaiting a certification by the Board. The rule applicable was well stated by Judge Lindley as follows:
 
 
 17
 "The Act forbids interference by an employer with the rights of his employees to bargain collectively, and, for that purpose, to select their own bargaining representative. When two unions are vieing for majority support of his employees, an employer must, of course, maintain a position of strict neutrality. He must refrain from any action which tends to give either an advantage over its rival; he may do nothing which tends to coerce his employees to join or to refrain from joining a particular union. Recognition of one competitor as bargaining agent during this contest period, absent proof of majority support, is a proscribed act. See, e. g., Harrison Sheet Steel Co. v. N. L. R. B., 7 Cir., 194 F.2d 407, 410; N. L. R. B. v. Faultless Caster Corp., 7 Cir., 135 F.2d 559; Elastic Stop Nut Corp. v. N. L. R. B., 8 Cir., 142 F.2d 371, 375-376, certiorari denied 323 U.S. 722, 65 S.Ct. 55, 89 L.Ed. 580.
 
 
 18
 "The Act does not require, however, that this neutrality continue until the last dissident voice is stilled. Indeed, in keeping with the purpose of the Act, harmonious employer-employee relations require that the instability inherent in a contest end when one contestant is able to muster majority support. Although the prize of recognition must not be employed coercively to influence the employees in making their decision, once indisputable proof of majority choice is presented to the employer, the Act imposes on him a duty to award recognition to the agent so chosen by his employees. N. L. R. B. v. W. T. Grant Co., 9 Cir., 199 F.2d 711, certiorari denied 344 U.S. 928, 73 S.Ct. 497, 97 L.Ed. 714; N. L. R. B. v. Gutmann & Co., 7 Cir., 121 F.2d 756; Stewart-Warner Corp. v. N. L. R. B., 4 Cir., 194 F.2d 207; N. L. R. B. v. Standard Steel Spring Co., 6 Cir., 180 F.2d 942; N. L. R. B. v. Flotill Products, Inc., 9 Cir., 180 F.2d 441."
 
 
 19
 Almost on "all fours" with the case here is N. L. R. B. v. Standard Steel Spring Co., 6 Cir., 180 F.2d 942, 946. In that case a representation petition was actually pending before the Board. Recognition of one of two competing unions was held an unfair labor practice by the Board; but an order based on such finding was denied enforcement by the Court of Appeals of the Sixth Circuit on the ground that, although not certified by the Board, the union recognized represented a majority of the employees. The court, speaking through Judge McAllister, said:
 
 
 20
 "The mere circumstance that there is pending an undisposed proceeding before the Board for the determination of the employees' choice of representative, based on a petition brought by one union, does not convict an employer of unfair labor practices for recognizing another union as the employees' representative on clear proof of such majority representation, submitted several months after the inception of the representation proceedings. This is not a case where a company has interfered with the right of its employees to a fair, unhampered choice of their bargaining representative, or where it has intruded its economic power to assist or encourage, or to oppose or discourage adherence to a particular labor organization."
 
 
 21
 Certainly, the pendency of a representation petition before the Board is as strong a reason for requiring neutrality on the part of the employer as the fact that such a petition has been dismissed as premature without prejudice to the filing of a subsequent petition. In neither case, we think, does the maintenance of neutrality require that the employer refuse to recognize a bargaining agent chosen by a majority of his employees if such majority is so clearly established that there can be no true question with regard thereto. We cannot sustain the action of the Board, therefore, in finding an unfair labor practice merely because of the recognition of District 50 without finding whether or not that organization did in fact represent so clear a majority of employees, as contended, that there was no real question as to its majority status.
 
 
 22
 We think, also, that there was error in the order in directing the companies to cease and desist recognizing District 50 United Mine Workers of America as bargaining representative "unless and until said labor organization shall have been certified as such by the National Labor Relations Board". Since the United Mine Workers had not complied with the filing provisions of the Labor Management Relations Act, secs. 9(f), (g) and (h), it could not ask relief from or be certified by the Board. It was not, however, precluded by that act from representing employees or acting as bargaining representative for them. United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 76 S.Ct. 559, 566. As said by the Supreme Court in the case cited:
 
 
 23
 "Section 9(a) provides that representatives `designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: * * *.' That fits this situation precisely. It does not require the designated labor organization to disclose the salaries of its officers, or even to file non-Communist affidavits.
 
 
 24
 "Under those sections and by virtue of the conceded majority designation of the union, the employer is obligated to recognize the designated union. Upon the employer's refusal to do so, the union, because of its noncompliance with § 9(f), (g) and (h), cannot resort to the Labor Board. It can, however, take other lawful action such as that engaged in here."
 
 
 25
 While the form of order here entered would be appropriate if applied to a union which had complied with the filing provisions of the Labor Management Relations Act, it was not appropriate when applied to a union which was authorized to represent the employees as bargaining representative but which, because of failure to comply with the filing provisions of that act, could not apply to the Board for relief or be certified by it. If a cease and desist order were proper under the circumstances of the case, it should have been couched in language which would not have precluded representation of the employees by District 50 if chosen by a majority to represent them after all effects of any unfair labor practice had been eliminated.
 
 
 26
 For the reasons stated, the order under review will be set aside and the case will be remanded to the Board for further proceedings not inconsistent herewith.
 
 
 27
 Order set aside and case remanded to board.