DISTRICT 50, UNITED MINE WORKERS OF AMERICA, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BOWMAN TRANSPORTATION, Inc., Respondent.

Nos. 12887, 12950.

United States Court of Appeals District of Columbia Circuit.

Argued April 9, 1956.

Decided Oct. 4, 1956.

Mr. E. Crampton Harris, Birmingham, Ala., with whom Messrs. Yelverton Cowherd and Alfred D. Treherne, Washington, D. C., were on the brief, for petitioner in No. 12,887.

Mr. Frederick U. Reel, Attorney, National Labor Relations Board, of the bar of the Supreme Court of Wisconsin, pro hac vice, by special leave of Court, with whom Messrs. Theophil C. Kammholz, General Counsel, National Labor Relations Board, David P. Findling, Associate General Counsel, National Labor Relations Board, and Marcel Mallet-Prevost, Assistant General Counsel, National Labor Relations Board, and Mrs. Nancy M. Sherman, Attorney, National Labor Relations Board, were on the brief, for respondent in No. 12,887 and petitioner in No. 12,950. Mr. Robert G. Johnson, Attorney, National Labor Relations Board, also entered an appearance for respondent in No. 12,887 and petitioner in No. 12,950.

No appearance for respondent in No. 12,950.

Before PRETTYMAN, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order which requires Bowman Transportation, Inc., an interstate trucking company, to cease and desist from certain unfair labor practices, and to redress them by taking the prescribed affirmative action. Bowman Transportation has not complained of the order and did not appear here. But District 50, United Mine Workers of America, which had been chosen by the Bowman employees as their exclusive bargaining representative but has not been certified as such by the Board, petitions us to review and set aside three paragraphs of the order by which it feels aggrieved.

The background of the Labor Board's order and its essential features may be quickly sketched. In November, 1953, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL, Local No. 612, undertook to organize Bowman's employees and established a picket line at its main terminal in Gadsden, Alabama. The Teamsters' efforts, opposed by the company, were unsuccessful but were still in progress, at least to the extent of the picketing which a state court first enjoined but later permitted, with violence and disorder forbidden, when another labor organization appeared on the scene in May, 1954.

The president of Bowman called a meeting of all employees for May 22, after having been told by some employees they wanted a contract, and after having conferred with organizers for District 50. The meeting was largely attended. Those present voted unanimously to be represented by District 50 and most of them signed authorization cards, whereupon Bowman recognized that union as the bargaining representative and entered into a contract with it.

Because of these events, the General Counsel of the Labor Board charged Bowman with several unfair labor practices. After a hearing the Board found: (1) that Bowman discriminatorily discharged driver Gross and removed driver Lackey from his regular run because of their activities in behalf of Teamsters, thereby discouraging membership in that union, an unfair labor practice within the meaning of § 8(a)(3) of the Act* (2) that Bowman interfered with the administration of District 50 and

---

* 29 U.S.C.A. § 158.

contributed support to it and so engaged in unfair labor practices within the meaning of § 8(a) (2) of the Act; and (3) that Bowman interfered with, restrained and coerced its employees in the exercise of the rights guaranteed in § 7 of the Act, and thereby engaged in unfair labor practices within the meaning of § 8(a) (1) of the Act.

Upon these findings, the Board ordered Bowman to cease and desist from: 1(a) the unfair labor practices found by it; 1(b) interfering with, restraining or coercing its employees in the exercise of their statutory rights; and from

"[1] (c) Giving effect to the collective bargaining agreement, dated May 22, 1954, between the Respondent and District 50, United Mine Workers of America, or to any extension, renewal or modification thereof, or any other contract agreement between the Respondent and the said labor organization which may now be in force;

"[1] (d) Recognizing District 50, United Mine Workers of America, as the representative of its employees for the purpose of dealing with the Respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of employment, unless and until the said labor organization shall have been certified as such representative by the Board."

The portion of the order requiring affirmative action directed Bowman to offer reparations to drivers Gross and Lackey, and to

"[2] (c) Withdraw and withhold all recognition from District 50, United Mine Workers of America, as representative of its employees for the purpose of dealing with the Respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of employment, unless and until the said labor organization shall have been certified as such representative by the Board."

The order also required Bowman to post prescribed notices.

May 11, 1955, before enforcement of the order had been sought, District 50, which had not theretofore been a party to the proceeding, filed with the Board an application to modify the order by striking therefrom paragraphs 1(c), 1(d) and 2(c), which we have reproduced above. The application was denied by the Board.

Part of the background of the Board's order is the fact that the Teamsters union had theretofore filed the information and affidavits described in § 9(f), (g) and (h) of the Labor Management Relations Act, 1947, while United Mine Workers of America, the parent union of District 50, has not filed thereunder. Teamsters was and is therefore eligible to be certified as the bargaining representative of Bowman's employees if it were chosen by them, but District 50, though chosen, may not be certified so long as its parent is in a state of noncompliance.

That Bowman had engaged in the unfair labor practices found by the Board clearly appears from the evidence. It was appropriate to order, as the Board did, that the employer correct its discriminatory treatment of drivers Gross and Lackey, and that it cease and desist from giving effect to its contract with District 50, which was unfairly arrived at through Bowman's illegal assistance to that union. In those respects the order should be enforced.

This leaves for consideration paragraphs 1(d) and 2(c) of the order which direct Bowman to cease and desist from recognizing District 50 as the bargaining representative, and to withdraw and withhold such recognition, "unless and until the said labor organization shall have been certified as such representative by the Board." District 50's attack on these portions of the order raises the question whether the Labor Board has authority to forbid an employer to recognize or contract with a labor organization chosen by its employees as their exclusive bargaining representative

so long as the union remains uncertified as such.

We hold the Board does not have such authority. In United Mine Workers of America v. Arkansas Oak Flooring Co., 1956, 351 U.S. 62, 71–72, 76 S.Ct. 559, 564, the Supreme Court observed that there is no statutory provision to the effect that a non-complying union "may not represent an appropriate unit of employees if a majority of those employees give it authority so to do." The Court went on to say:

> "* * * Likewise, there is no statement precluding their employer from voluntarily recognizing such a noncomplying union as their bargaining representative. Section 8 (a) (5) declares it to be an unfair labor practice for an employer 'to refuse to bargain collectively with the representatives of his employees, *subject to the provisions of section 9(a)*.' (Emphasis supplied.) Section 9(a), which deals expressly with employee representation, says nothing as to how the employees' representative shall be chosen. See Lebanon Steel Foundry v. Labor Board, 76 U.S.App.D.C. 100, 103, 130 F.2d 404, 407. It does not make it a condition that the representative shall have complied with § 9(f), (g) or (h), or shall be certified by the Board, or even be eligible for such certification."

In footnote 8, 351 U.S. at page 72, 76 S.Ct. at page 565, the Court noted that "A Board election is not the only method by which an employer may satisfy itself as to the union's majority status."

In a recent case somewhat similar to this one,[1] Chief Judge Parker of the Fourth Circuit discussed the Oak Flooring opinion and said:

> "* * * If a cease and desist order were proper under the circumstances of the case, it should have been couched in language which would not have precluded representation of the employees by District 50 if chosen by a majority to represent them after all effects of any unfair labor practice had been eliminated."

We adopt the language just quoted as applicable to this case. Paragraphs 1 (d) and 2(c) are therefore improper and should not be enforced in their present form, since they preclude District 50 from representing the employees in the future, even though hereafter they should choose it in an atmosphere and a situation entirely free from the influence of unfair labor practices. There should be added, at the end of each of those paragraphs, the words "or shall have been freely chosen as such by a majority of the employees after all effects of unfair labor practices have been eliminated."

With paragraphs 1(d) and 2(c) amended in the manner indicated above, and with the slight changes in the notice to be posted by the company which will hereinafter be suggested, we think the order will achieve the Board's proper objective, which is to eliminate the effects of Bowman's unfair labor practices so as to place Teamsters, District 50, employer and employees *in statu quo ante*, and to forbid and guard against future unfair practices by the employer, so that thereafter the employees and any and all unions concerned may work out the representation problem, untrammeled by any outside influence. When this objective has been reached, and if the employees then want a bargaining representative, they will be in a position to choose one in any manner which clearly indicates their desire. They may select non-complying District 50, or complying Teamsters, or any other complying or non-complying union, and the employer must recognize their choice. The only limitation is that, if the Board conducts an election, District 50 will not be on the ballot. Amended in the manner

1. District 50, United Mine Workers of America v. National Labor Relations Board and Pittsburgh Valve Co. v. National Labor Relations Board, 4 Cir., 1956, 234 F.2d 565, 571.

we have indicated, the order will be enforced.

There still remains, however, the necessity of deciding when the ill effects of Bowman's past practices have been removed. Certainly, one effect of Bowman's unfair labor practices is removed by requiring the offer of reparation to the two drivers. Another is eliminated by striking down the present contract, unfairly arrived at, between Bowman and District 50. The possibility of continuing effect is guarded against by ordering Bowman (1) to cease and desist from the labor practices found to be unfair; (2) to refrain in the future from engaging in those or any other unfair practices; and (3) to post notices for 60 days that, in obedience to the Board's order, it will make the required amends and will not in the future interfere in any way with the organizational efforts of any union, or with the employees' exercise of the rights guaranteed to them by law.

We think that, 60 days after the notices have been posted, it may reasonably and safely be assumed that normalcy has been restored by the Board's corrective order. Thereafter, if a Board election should be required and if the employees should therein select Teamsters or some other complying union as bargaining representative, the matter would be at an end. But, if in an election the employees should reject any and all candidates, or if no election is held, and if the employees should designate District 50 as their choice, that union will become the bargaining representative.

The form of notice to be posted by the company should be modified so as not to be inconsistent with this opinion. Moreover, the notice should not indicate that the Board prefers Teamsters. We suggest that references to that union in the Board's form of notice are susceptible of being construed as so indicating, and might better be omitted so that the company's pledges of non-interference will apply to all labor organizations. We attach as an appendix what we regard as a proper notice.

The order under review will be amended in the manner set forth in the foregoing opinion. As so amended, the order will be enforced.

Appendix
Notice to all Employees
Pursuant to
a Decree

of the United States Court of Appeals for the District of Columbia Circuit, enforcing an order of the National Labor Relations Board, and in order to effectuate the policies of the National Labor Relations Act, as amended, we hereby notify our employees that:

We Will Not discourage membership in any labor organization of our employees, by discharging or refusing to reinstate any of our employees, or in any other manner discriminating in regard to their hire or tenure of employment, or any term or condition thereof, because of their activity in behalf of or membership in such labor organization.

We Will offer to Welch Gross, upon his application, immediate and full reinstatement in his former position or in one substantially equivalent, without prejudice to any seniority or other rights and privileges he previously had, with back pay from the date of his discharge to the date of his reinstatement.

We Will offer assignments to Joe Lackey, upon his re-employment, the equivalent to those he had before he was removed from his regular run.

We Will Not interrogate our employees concerning their activities in behalf of any labor organization in a manner which constitutes interference, restraint or coercion in violation of § 8(a) (1) of the Act, and we will not engage in surveillance of our employees at labor organization meetings.

We Will Not interfere with the formation or administration of any labor organization or contribute financial or other support to any such organization.

We Will Not give effect to our agreement, dated May 22, 1954, with District 50, United Mine Workers of America, or

to any other contract or agreement with District 50 which may now be in force, since the National Labor Relations Board has held that the contract was brought about through unfair labor practices.

We Will Not recognize District 50 as the bargaining representative of our employees, unless and until it shall have been certified as such representative by the National Labor Relations Board, or shall have been selected as such by a majority of our employees at a time at least 60 days later than the date of this notice.

All our employees are free to become, remain, or refrain from becoming, members of any labor organization, except to the extent that this right may be affected by agreements made in conformity with § 8(a) (3) of the National Labor Relations Act, as amended.

Bowman Transportation, Inc.
(Employer)

Dated ............. By .............
(Title)

This notice must remain posted for 60 days from the date hereof, and must not be altered, defaced, or covered by any other material.

WASHINGTON, Circuit Judge (dissenting).

I am constrained to disagree with the court's action in modifying the Board's order.

1. Section 10(c) of the Labor Management Relations Act of 1947, 29 U.S.C. § 160(c) (1952), authorizes the Board, when it finds that an unfair labor practice has been committed, to "cause to be served on such person [committing the unfair labor practice] an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action * * * as will effectuate the policies of this sub-chapter".[1] These policies include, among others, the elimination of unfair labor practices by employers and unions, and

the protection of the employees' right to designate a bargaining representative of their own choosing, as expressed in Section 9(a) of the Act.

It seems quite clear that a provision prohibiting an employer from recognizing a union unfairly controlled or supported by the employer until that union has been certified as the bargaining agent of the employees would in many cases be an important factor in purging unfair labor practices. In remedying such practices the Board has long inserted a provision of that sort in its orders. Even stronger action has sometimes been taken by the Board, and the Supreme Court has supported it. For example, employer-dominated unions have on occasion been ordered completely disestablished, with Supreme Court approval. National Labor Relations Board v. Falk Corp., 1940, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; H. J. Heinz Co. v. National Labor Relations Board, 1941, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309; National Labor Relations Board v. Link-Belt Co., 1941, 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. And in a case where the employer had assisted union A, the Board ordered him to deal exclusively with union B (a rival), even though before the order was issued the Board had been advised that a majority of the employees wished to be represented by the assisted union. The order was upheld. International Association of Machinists v. National Labor Relations Board, 1940, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50. In view of these precedents, the Board may surely take a less stringent course, and in an appropriate case order non-recognition by the employer of the assisted union as long as it remains uncertified. As to unions complying with the filing provisions of the Act, that conclusion would seem beyond question. As Chief Judge Parker said in District 50, United Mine Workers v. National Labor Relations Board, 4 Cir., 1956, 234 F.2d 565, 571:

1. The subchapter referred to is that titled "National Labor Relations", which deals generally with the Labor Board, its powers, procedures, and jurisdiction.

" \* \* \* the form of order here entered [similar to that in the instant case] would be appropriate if applied to a union which had complied with the filing provisions of the Labor Management Relations Act \* \* \* ".

The question here, of course, is whether the fact that a union has not complied with the filing provisions of the Act, and refuses to comply, entitles it to special treatment by the Board. The Ninth Circuit has answered this question in the negative.[2] Yet the decision of the majority here, and of the Fourth Circuit in the District 50 case, is to the contrary. The holding is—in substance and effect—that the Board cannot as a matter of law apply to a union which has not complied with the filing provisions of the law, the very condition which it could rightfully apply to a complying union. I find no basis in principle for giving a non-complying union an advantage which complying unions do not have. In practice to do so may encourage unions not to comply with the Act.

Mine Workers v. Arkansas Oak Flooring Co., 1956, 351 U.S. 62, 76 S.Ct. 559, relied on by the majority, simply holds that noncompliance by a union with Section 9(f), (g), and (h) of the Act does not open the door to the state courts to take action against the union that they would not otherwise be able to take. As I read that decision, it was intended to preserve and protect the authority of the National Labor Relations Board, not to undermine and weaken it. It can hardly be interpreted as holding that noncompliance by a union prevents the National Labor Relations Board from taking action which it is authorized to take against a *complying* union, and which the Act itself permits. It is true that the Supreme Court's opinion declares that "no consequences other than those so listed [in the Act] shall result from noncompli-

ance." 351 U.S. at page 73, 76 S.Ct. at page 566. But the context of this statement indicates that the Court was referring to consequences apart from those sanctioned by the Act itself. "Elimination of the Board [as a forum of resort by any union not complying with the filing provisions of the Act] does not, however, eliminate the applicability of the National Labor Relations Act, as amended \* \* \* ". Id. 351 U.S. at page 74, 76 S.Ct. at page 566.

2. The principle is now well established that the Board, and not the courts, is primarily charged with the responsibility of determining what provisions are best included in Board orders to carry out the policies of the Act. "The particular means by which the effects of unfair labor practices are to be expunged are matters 'for the Board not the courts to determine.' \* \* \* We give considerable weight to that administrative determination. It should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Electric & Power Co. v. National Labor Relations Board, 1943, 319 U.S. 533, 539–540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568, citing International Association of Machinists, v. National Labor Relations Board, 1940, 311 U.S. 72 at page 82, 61 S.Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. Link-Belt Co., 1941, 311 U.S. 584 at page 600, 61 S.Ct. 358, 85 L.Ed. 368. The majority has not suggested that the Board's order does not effectuate the policies of the Act or that it was not intended to do so. Nor, as I view the case, could such a conclusion fairly be reached.

Concededly, if District 50 or its parent organization persists in refusing to file the required statements and affidavits, the Board's order will effectually preclude the employer from recognizing and con-

---

2. See National Labor Relations Board v. Wemyss, 9 Cir., 1954, 212 F.2d 465, where the assisted union had not complied with Section 9(f), (g), or (h), [see p. 470], and where the court held that the assistance given warranted issuance of "an order that the employer withdraw recognition from the favored organization unless and until it is certified by the Board after a fair election." at page 472.

tracting with District 50 as the employees' bargaining agent, even though the employees continue to favor it. But this restraint on the employees' freedom of choice is in part due to the attitude of the union, which has chosen not to comply with Section 9. Furthermore, if the Board properly concludes that the certification of the union in the normal way is necessary to dissipate the effect of the unfair labor practices, the order would tend to assure—rather than deny—the freedom of choice guaranteed by the Act by removing improper restraints on the employees. See International Association of Machinists v. National Labor Relations Board, 311 U.S. at page 82, 61 S.Ct. 83; H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. at page 522, 61 S.Ct. 320.

The Board stated here that the disputed provision of its order was included "To remedy the effect of the illegal assistance to the UMW," and further that:

"By its Order, the Board is merely directing that the UMW, like any other assisted union, demonstrate that its right to be the exclusive representative of the employees involved has been established in an atmosphere free of restraint and coercion."

And with regard to its previous practice the Board stated:

"However, in the case of an assisted but undominated labor organization, the Board has required the offending employer to withdraw and withhold recognition from the assisted union until it was certified, thus enabling the Board to assure the affected employees that their statutory right to freely choose a bargaining representative shall be preserved by conducting an election under conditions which will render such a choice possible."

It is true that the Board did not expressly consider any alternative remedies—such as conducting an investigation at a later time to determine whether the effects of the unfair labor practices had by then been dissipated. But District 50 suggested no such alternative: it simply argued to the Board that the order was beyond the Board's power. When this argument was rejected, it appealed to this court on the same ground. As I have indicated, I think that ground is clearly untenable: in a proper case, the Board has power to enter an order of the present sort. And I think that this is such a case, and that the Board's findings were adequate to support its action—especially since it was never asked to consider any other type of action. But if this be doubted, the proper course for this court is to remand the case to the Board for further consideration. cf. Jacob Siegel Co. v. Federal Trade Commission, 1946, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888. Certainly it is not within our province for us to rewrite the Board's order to choose a different remedy than it has chosen, and to direct that our new order be enforced. See National Labor Relations Board v. Falk Corp., 1940, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; Federal Power Commission v. Idaho Power Co., 1952, 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15.

