NATIONAL LABOR RELATIONS BOARD
v. W. T. GRANT CO.
No. 13133.

United States Court of Appeals
Ninth Circuit.
Nov. 10, 1952.

George J. Bott, Gen. Counsel, NLRB, David P. Findling, Asst., A. Norman Somers, Asst. Gen. Coun., Marcel Mallet-Prevost and Irving M. Herman, Attys., NLRB, Washington, D. C., for petitioner.

Eugene M. Foley, New York City, for respondent.

Before HEALY and POPE, Circuit Judges, and HARRISON, District Judge.

HEALY, Circuit Judge.

This matter is here on petition of the National Labor Relations Board for enforcement of an order issued against respondent, the operator of a store at San Jose.[1]

In ruling on the case the Board adopted the findings of the trial examiner and approved of his report and recommendations. It concluded that respondent had engaged in practices violative of § 8(a)(1) and (5) of the Act, 29 U.S.C.A. § 158(a)(1, 5). In summary, these practices comprehended the interrogation of certain employees concerning union membership; a unilateral grant of wage and other benefits with intent to discourage union affiliation; respondent's insistence upon a Board election prior to bargaining, an insistence found to be motivated by a desire to gain time in which to undermine the union; and finally an anticipatory threat to close the store rather than accede to a union shop.

It is not disputed that the appropriate bargaining unit in this case consisted of all employees at the San Jose store, exclusive of supervisors. On January 5, 1950 an agent of the Retail Clerk's Union wrote respondent's manager requesting a bargaining conference, the letter being received on January 6. As of January 5 there were 40 employees in the unit. On or prior to that date 18 of them had signed cards designating as their bargaining representative Local 428 of the Retail Clerks. Three other employees, making 21, or a majority of the whole, signed like designations on January 6. Respondent argues that the written request for bargaining was nugatory inasmuch as on the day it was mailed the union did not represent a majority. The argument is specious, particularly as it appears that the union representative called personally on the manager a few days later and again requested bargaining.

The Board found, and there is no evidence to the contrary, that the majority representation continued through the work week ending January 25, 1950. On the latter date a meeting was held between repre-

1. The San Jose store is one of a chain operated by respondent.

sentatives of the union on the one hand and respondent's manager and its labor counsel on the other. At that time the union representatives proposed that respondent check the authorization cards or employ any other quick procedure for ascertaining the union's majority status, but respondent's spokesmen insisted upon a Board election before bargaining. They suggested that the union file with the Board a representation petition, which it did on January 31. Respondent insisted on a formal hearing on the petition and refused a request that it consent to an immediate election, although there appears to have been no issue other than the one which the election itself would determine. The hearing on the union's petition occurred on March 3, and on April 4 the Board ordered the holding of an election, scheduled for May 3. Having in mind respondent's activities following the meeting of January 25, we think the Board was not in error in finding that the insistence upon an election was not motivated by a good faith doubt of the union's majority, but by a purpose to gain time in which to undermine the union and vitiate its majority. Compare Joy Silk Mills v. NLRB, 87 U.S. App.D.C. 360, 185 F.2d 732, 741, certiorari denied 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350.

Early in February the manager, without notice to the union, called a meeting of the employees and announced wage increases to 23 of them, plus a change of work week from six to five days for 13 of the employees—a change generally favored by all workers at the store. These benefits, together with a number of promotions, became effective February 23. In his testimony before the examiner the manager conceded that he had never before granted so many wage increases simultaneously, nor could he recall any prior occasion when increases were granted on a group basis. Not without warrant under the circumstances, the Board thought that these raises, promotions, and desired changes in the work week were deliberately calculated to dampen the ardor of the employees for union affiliation. Cf. NLRB v. Bailey Co., 6 Cir., 180 F.2d 278.

In March an employee named Putney who was wearing a union button while at work was asked by the assistant manager whether she was the only girl in the store who belonged to the union. Putney removed the button. In April employee Nix was asked by the same supervisor why she was still wearing her union button. Nix thereafter wore the button on the "underneath side" of her sweater. It is argued that these questions were put in a jocular vein and therefore had no tendency to coerce. However, the action of the two girls would appear to speak more persuasively than the smile of the supervisor.

In February respondent posted a notice in the store for the information of its employees stating that the Company's open-shop policy would not be changed; and in late April and again on May 1 the manager showed to numerous employees a letter from respondent's counsel, dated April 27, stating that in order to make assurance doubly sure he had cleared the subject with the Company and that the latter would not agree to a union shop under any circumstances. The letter added that "if we can't do business in San Jose on an open shop basis, we just won't do business in San Jose." The Board was of opinion that the posted notice of February 11 plus the threat of closure contained in the letter written on the eve of the intended election evidenced a fixed determination not to bargain on the subject of union security and constituted coercion of the employees in the exercise of their rights under § 7.

Section 8(a) (3) of the Act as of the time in question specifically permitted agreements for union security where a majority of the employees by vote authorized the making of such an agreement. And as this court observed in NLRB v. Andrew Jergens Co., 9 Cir., 175 F.2d 130, 133, "Union security is properly a 'condition of employment' within the meaning of § 9(a) of the National Labor Relations Act [29 U.S.C.A. § 159(a)] and hence, is within the statutory area of collective bargaining." Here the posted notice and the threat to close did not stand alone; they are found in a milieu of anti-union activity. As the Board re-

marked, respondent was concurrently engaging in a course of conduct designed to relieve it of the necessity of ever having to yield to the union on any point or even meet it across a bargaining table. Under the circumstances we are not persuaded that the Board was wrong in construing the notice and threat as reflecting an anticipatory refusal to bargain concerning a union shop. Cf. NLRB v. Elkland Leather Co., 3 Cir., 114 F.2d 221, 223, 224.

An appropriate decree will be entered enforcing the Board's order as prayed in its petition.