293 F.2d 133
 110 U.S.App.D.C. 294
 LOCAL 164, Local 1287, an Local 1010, each affiliated with
the BROTHERHOOD OF PAINTERS, and the Brotherhood of
Painters, decorators and Paperhangers of America, AFL-CIO,
and David W. Johns, Petitioners
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 15643.
 United states Court of Appeals District of Columbia Circuit.
 Argued Dec. 2, 1960.
Decided April 27, 1961, Certiorari Denied Oct. 9, 1961, See
82 S.Ct. 42.
 
 Mr. James F. Carroll, Washington, D.C., with whom Mr. Herbert S. Thatcher, Washington, D.C., was on the brief, for petitioners.
 Mr. Frederick U. Reel, Atty., N.L.R.B., with whom Messrs. Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and James C. Paras, Atty., N.L.R.B., were on the brief, for respondent.
 Before WILBUR K. MILLER, Chief Judge, and EDGERTON and DANAHER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Local 164 of the Painters' union had had collective bargaining agreements with Cheatham Painting Company of Jacksonville, Florida, since 1945, until the latest of them expired in 1959. At bargaining meetings held prior to expriation, Local 164 submitted to the Company a new contract which covered wages, hours, and other terms and conditions of employment. Also included were two proposals which had not been submitted to other contractors in the area of the Local's jurisdiction, one of which reads:
 
 
 2
 'Section 12: As a protection against possible violation of any of the terms or conditions of this collective agreement, the undersigned agrees to post a bond of $5,000, which bond will be forfeited and paid to the union in the event that it is found by the Joint Trade Board hereunder that said contractor has committed any substantial breach of this agreement or has failed to comply with any of the terms or conditions of employment specified thereunder.'
 
 
 3
 The Company accepted the proposed contract in all respects except that it declined to agree to the inclusion of Section 12, and refused to sign unless that provision were eliminated.[1] The Local would not sign the contract without the inclusion of Section 12. Because of this impasse, the union called strikes at all Cheatham jobs in Florida, and the three petitioning Locals obeyed the call. On the Company's charge of an unfair labor practice, the General Counsel of the Labor Board issued a complaint against the petitioners alleging, among other things, that in refusing to sign a contract embodying the wages, hours, and other terms and conditions of employment which had been agreed upon, unless the contract also provided for a performance bond, they had violated Section 8(b)(3) of the Labor Management Relations Act, 1947, 61 Stat. 136, 29 U.S.C. 158(b)(3),* which is as follows:
 
 
 4
 '(b) It shall be an unfair labor practice for a labor organization or its agents--
 
 
 5
 '(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title; * * *.'
 
 
 6
 The parties stipulated to the facts necessary to a determination, and waived their right to a hearing and to the issuance of a trial examiner's intermediate report and recommended order. Thereafter the Board issued a decision and order in which it held that, by refusing to sign a collective bargaining agreement unless it contained a provision requiring the employer to execute a performance bond, the peitioners had refused to bargain collectively with the employer. The petitioner were ordered to cease and desist from 'insisting * * * upon inclusion in the proposed contract of a clause requiring A. D. Cheatham Painting Company to post a performance bond * * *' and, upon request, to bargain collectively with the Company.
 
 
 7
 The petitioners and respondent, having respectively sought review and enforcement of the Board's order, stipulated that the only issue for our determination is the following:
 
 
 8
 'Whether petitioners were guilty of a failure to bargain in good faith in violation of Section 8(b)(3) of the National Labor Relations Act by insisting, as a condition to agreement, that the collective bargaining contract contain a provision requiring the employer to post a performance bond.'
 
 
 9
 'Wages, hours, and other terms and conditions of employment' are matters about which an employer and the representative of its employees must bargain in good faith; that is to say, under Section 8(d) of the Act, they are subjects of mandatory bargaining. But, those matters having been agreed upon, neither the employer nor the representative of its employees may refuse to enter into an agreement embodying them on the ground it does not include some provision about a matter which is not a mandatory subject to bargaining; such conduct is, in substance, a refusal to bargain about the subjects that are within the scope of mandatory bargaining. National Labor Relations Board v. Wooster Division of Borg-Warner Corp., 1958, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823.
 
 
 10
 The question is, then, whether the union's demand that the company execute a performance bond is within the 'other terms and conditions of employment,' about which the Act requires the parties to bargain. In the statutory expression, 'wages, hours, and other terms and conditions of employment,' the word 'other' has significance: it shows that the terms and conditions of employment to which it refers are such as relate to the actual performance of labor in the same sense that wages and hours relate to that subject, or to the relations between the parties which result from the performance of work. So, we think the statutory language, 'other terms and conditions of employment,' refers to and includes only those provisions, in addition to wages and hours, which have to do with the actual performance of work or to subsequent relations.
 
 
 11
 The requirement of a performance bond has nothing to do with the performance of work, but is a condition which must be met before work is even undertaken. We are unwilling to say that a condition precedent to employment is a 'condition of employment,' such as wages and hours, within the meaning of the statute. It follows that, in our view, execution of a performance bond is not a condition of employment and, therefore, is not a subject of compulsory bargaining. Hence, under the Borg-Warner case, the union's conduct here was, in substance, a refusal to bargain about the subjects that are within the scope of mandatory bargaining.
 
 
 12
 It will be perceived from the language of Section 12, supra, that the union was demanding a bond which might be forfeited and the proceeds paid to the union should the contractor commit any 'substantial breach' of the agreement or fail to comply 'with any of the terms or conditions of employment specified thereunder.' The union itself in proposing the language clearly recognized that terms or conditions of employment constituted subjects quite apart from liability to attach by virtue of the terms of the bond. There has been some suggestion that the clause is part of a proposed system of arbitration. The parties have exhibited no such arbitration plan. Congress, on the other hand, has provided a remedy, available alike to an employer and a labor organization to be predicated upon a complaint of violation of a contract. The Supreme Court has held that 29 U.S.C. 185 (1958), 61 Stat. 156,** authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements. Textile Workers of America v. Lincoln Mills, 1957, 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972.[2]
 
 
 13
 The Court found that Congress in the 1947 amendment had expressed 'a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations (as well as employers) and that industrial peace can be best obtained only in that way.' Id., 353 U.S. at page 455, 77 S.Ct. at page 917. We are persuaded that Borg-Warner, as noted, spelled out the matters concerning which the parties must bargain in good faith.[3] A performance bond is not among them, for Congress has provided a remedy to be available in the event of a breach of the contract.
 
 
 14
 Our position is supported by National Labor Relations Board v. Dalton Tel. Co., 5 Cir., 1951, 187 F.2d 811, 812, where a somewhat similar factual situation presented the same legal question we have here. There the company and the union reached an impasse in bargaining negotiations when, after all substantive issues had been agreed upon, the company insisted, as a condition precedent to the execution of a contract, that the union register under a provision of the Georgia Code so as to be subject to suit on its contract. The union refused. The Fifth Circuit said the employer, 'by insisting that the union become an entity amenable to suit in the state courts, left the sphere of 'terms and conditions of employment,' and conditioned his willingness to sign the agreement on a matter outside the area of collective bargaining.'[4]
 
 
 15
 The employer's demand in the Dalton case, that the union become subject to suit for enforcement of, or because of a violation of, the contract, is comparable with the union's demand in the present case that the company give bond to pay a penalty should it violate the contract. The latter is no more one of the 'other terms and conditions of employment' than was the former. Following the holding of the Fifth Circuit, which the Supreme Court declined to review,[5] we hold that in insisting upon a performance bond the union left the sphere of 'terms and conditions of employment' and conditioned its willingness to sign the agreement on the matter outside the area of compulsory bargaining.
 
 
 16
 Petition to set aside denied and enforcement ordered.
 
 
 17
 EDGERTON, Circuit Judge (dissenting).
 
 
 18
 As to 'wages, hours, and other terms and conditions of employment' 8 of the Act requires the parties to bargain collectively and obligates neither party to yield. As to other matters the Act permits bargaining but is held to forbid insistence. National Labor Relations Board v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823.
 
 
 19
 A bonding clause in a collective agreement is a means of enforcing the agreement. In my opinion it is a 'condition of employment'.[1] The 'term 'bargain collectively' as used in the Act 'has been considered to absorb and give statutory approval to the philosophy of bargaining as worked out in the labor movement of the United States'. (Order of Railroad) Telegraphers v. Railway Express Agency, 321 U.S. 342, 346 (64 S.Ct. 582, 88 L.Ed. 788) (1944).' National Labor Relations Board v. American National Insurance Co., 343 U.S. 395, 408, 72 S.Ct. 824, 96 L.Ed. 1027.[2] Congress preferred the broad expression 'wages, hours, and other terms and conditions of employment' to a House version that would have limited compulsory bargaining to wages, hours and other specified subjects. 2(11) H.R. 3020, 80th Cong., 1st Sess., Legis.Hist. LMRA pp. 166, 313-314, 812, 867, 1541. Even that House version, which its sponsor said 'limits batgaining to matters of interest to the employer and to the individual man at work',[3] included 'administrative and procedural provisions relating to the foregoing subjects'.
 
 
 20
 Courts have required bargaining about a great variety of matters that do not relate to the actual performance of work, including rentals of company houses, National Labor Relations Board v. Lehigh Portland Cement Co., 4 Cir., 205 F.2d 821; checkoff of union dues, National Labor Relations Board v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131, 136; group health and accident insurance, W.W. Cross & Co. v. National Labor Relations Board, 1 Cir., 174 F.2d 875; a profit-sharing retirement plan, National Labor Relations Board v. Black-Clawson Co., 6 Cir., 210 F.2d 523 (dictum); an employee stock purchase plan, Richfield Oil Corp. v. National Labor Relations Board, 97 U.S.App.D.C. 383, 231 F.2d 717, 58 A.L.R.2d 833; a retirement and pension plan Inland Steel Co. v. National Labor Relations Board, 7 Cir., 170 F.2d 247, 12 A.L.R.2d 240; and union security, National Labor Relations Board v. W. T. Grant Co., 9 Cir., 199 F.2d 711, National Labor Relations Board v. Andrew Jergens Co., 9 Cir., 175 F.2d 130.[4]
 
 
 21
 The bonding proposal before us was petitioners' response to what they claimed were company breaches of a previous agreement.[5] It was a 'direct frontal attack' upon a vital problem. Cf. Local 24 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO v. oliver, 358 U.S. 283, 294, 79 S.Ct. 297, 3 L.Ed.2d 312. Provisions which tend to insure performance of the agreement 'materially affect' all its other provisions. Cf. National Labor Relations Board v. Lehigh Portland Cement Co., supra, 205 F.2d at page 823. 'A collective bargaining agreement is an effort to erect a system of industrial self-government.' United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 580, 80 S.Ct. 1347, 4 L.Ed.2d 1409.
 
 
 22
 Various proposals aimed, like the bonding clause, at enforcement of the collective agreement have long been regarded as within he mandatory bargaining requirement. An employer may insist on a no-strike clause. Lloyd A. Fry Roofing Co., 123 NLRB 647, 649; Shell Oil Co., 77 NLRB 1306; cf. National Labor Relations Board v. Wooster Division of Borg-Warner Corp., supra, 356 U.S. at page 350, 78 S.Ct. at page 723; National Labor Relations Board v. American National Insurance Co., supra, 343 U.S. at page 408, note 22, 72 S.Ct. at page 831. It can hardly be questioned that, conversely, a union may insist on the absence of such a clause. It would be anomalous to interpret a statute intended to promote industrial peace as allowing insistence on a right to strike and yet forbidding insistence on a performance bond, which is a more peaceable means of enforcing compliance with a contract. No doubt a union may insist on a provision for arbitration. Cf. U.S. Gypsum Co., 94 NLRB 112 (order amended on other grounds, 97 NLRB 889). The bonding clause before us would apply only 'in the event it is found by the Joint Trade Board hereunder' that the employer has committed a substantial breach of the agreement. It seems clear therefore that the clause, if adopted, would have been part of a system of arbitration.[6]
 
 
 23
 The Supreme Court has held that the phrase 'terms and conditions of employment' is not so broad as to cover clauses which did not recognize a certified bargaining agent and required a secret prestrike ballot. National Labor Relations Board v. Wooster Division of Borg-Warner Corp., supra. But the Court's reasons for holding that such clauses were not 'terms and conditions of employment' do not touch the many cases construing the phrase broadly, and they do not apply to the bonding clause in suit.[7] This bonding clause would enforce compliance with the agreement by providing a private remedy in case of breach, but would not conflict with the statutory shceme reflected in 301 of the Act,[8] which permits suit in a federal court for violation of an agreement. The Supreme Court has upheld enforcement, in suits under 301, of an agreement to arbitrate, Textile Workers of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; United steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432; United Steelworkers of America v. Warrior & Gulf Co., supra; and of an arbitrator's award of damages, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The Court clearly finds no conflict between the remedy in 301 of the Act and remedies which the parties create in the collective agreement.
 
 
 24
 Proposals that cannot be insisted upon are the less likely to be adopted.[9] To exclude bonding provisions from the scope of 8(d) goes a long way toward excluding them from collective agreements. In 1947, when Congress adopted 8(d), it expressed the fear that the Board had 'gone very far, in the guise of determining whether or not employers had bargained in good faith, in setting itself up as the judge of what concessions an employer must make and of the proposals and counterproposals that he may or may not make.' H.Rep. No. 245, 80th Cong., 1st Sess. 19 (1947); National Labor Relations Board v. American National Insurance Co., 343 U.S. at page 404, 72 S.Ct. at page 829. After Borg-Warner, and only last year, the Supreme Court said: '* * * it remains clear that 8(d) was an attempt by Congress to prevent the Board from controlling the settling of the terms of collective bargaining agreements * * *. Congress intended that the parties should have wide latitude in their negotiations, unrestricted by any governmental powers to regulate the substantive solution of their differences. * * * Our labor policy is not presently erected on a foundation of government control of the results of negotiations.' National Labor Relations Board v. Insurance Agents, 1960, 361 U.S. 477, 487, 488, 490, 80 S.Ct. 419, 4 L.Ed.2d 454. Section 8(d) provides that the obligation to bargain 'does not compel either party to agree to a proposal or require the making of a concession.' It is 'clear that the Board may not, either directly or indirectly, compel concessions or otherwise sit in judgment upon the substantive terms of collective bargaining agreements.' National Labor Relations Board v. American National Insurance Co., supra, 343 U.S. at page 404, 72 S.Ct. at page 829.
 
 
 25
 These considerations require a broad interpretation of the 'terms and conditions of employment' concerning which bargaining is required and insistence is permitted. I would set aside the Board's order.
 
 
 
 [1]
 The employer and the union also failed to agree on the inclusion of another clause (Section 13) relating to employment of painters by the employer in areas outside of Jacksonville, but this issue is not in the case, the union not contesting the Board's order thereon. All other portions of the collective agreement were agreed to by both parties
 
 
 *
 29 U.S.C.A. 158(b)(3)
 
 
 [2]
 After this case reached our court the union stated, and the Board agreed, that petitioners had insisted that the agreement include Section 12 because a year earlier than the expiration of the Florida contract, the employer in Georgia and within the jurisdiction of a different Local was said to have violated certain working rules and practices in Georgia. It was further recited in a stipulation before us, 'The company states that no such violations occurred.'
 
 
 **
 29 U.S.C.A. 185
 
 
 [3]
 The cases cited in the third paragraph of the dissenting opinion were all decided before the Borg-Warner opinion was issued
 
 
 [4]
 The Board points out in its Decision and Order that it has long held that an employer's insistence upon the filing of a performance bond by the union is a violation of Section 8(a)(5) beginning with Jasper Blackburn Corporation, 21 N.L.R.B. 1240, down to Cosco Products Co., 123 N.L.R.B. 91. And see International Brotherhood of Teamsters, et al., 87 N.L.R.B. 972
 
 
 [5]
 1951, 342 U.S. 824, 72 S.Ct. 43, 96 L.Ed. 623
 
 
 [1]
 The court suggests it cannot be a 'condition of employment' because it is 'a condition which must be met before work is even undertaken * * * a condition precedent to employment'. That the strikers would not work without the clause, which they were under no obligation to do if the clause is a 'condition of employment', does not show it is not a condition of employment. The record does not show when the bond was to be posted. I think it does not matter
 
 
 [2]
 Some agreements in this industry have contained bonding provisions
 
 
 [3]
 H.Rep. No. 245, 80th Cong., 1st Sess., Legis.Hist. LMRA p. 298
 
 
 [4]
 National Labor Relations Board v. Dalton Tel. Co., 5 Cir., 187 F.2d 811, on which he court relies, held that requiring a union to register with a Georgia court so as to subject itself to suit under Georgia law was 'outside the area of compulsory bargaining', but the Fifth Circuit reached that conclusion for a reason that has no application in the present case, namely: 'The Supreme Court has held that the bargaining rights created by the National Labor Relations Act may not be conditioned upon compliance with state registration laws. Hill v. Florida, 325 U.S. 538 (65 S.Ct. 1373, 89 L.Ed. 1782) * * *.' 187 F.2d at page 812
 
 
 [5]
 In a supplemental prehearing-conference stipulation petitioners say they insisted upon the bond because the comparny had 'violated working rules and practices * * * with which the company had agreed to conform.' The company says there had been no violations
 
 
 [6]
 The contract terms to which the parties agreed, in the pending contract or in previous contracts, are not in the present record
 
 
 [7]
 The Court said the pre-strike ballot clause 'deals only with the relations between employees and their union', 'substantially modifies the collective-bargaining system provided for in the statute by weakening the independence of the 'representative' chosen by the employees', and 'enables the employer, in effect, to deal with its employees rather than with their statutory representative.' The Court said the recognition clause was 'an evasion' of the statutory duty 'to bargain with the certified representative'. 356 U.S. 342, 350, 78 S.Ct. 718, 723
 
 
 [8]
 29 U.S.C. 185, 61 Stat. 156, 29 U.S.C.A. 185
 
 
 [9]
 Cf. dissenting opinion of Mr. Justice Harlan in National Labor Relations Board v. Wooster Division of Borg-Warner Corp., supra, 356 U.S. at pages 352-353, 78 S.Ct. at pages 724-725