**Betty J. SCHAFFER, et al.,**
**Plaintiffs/Appellants,**

v.

**BOARD OF EDUCATION OF the**
**CITY OF ST. LOUIS, et al.,**
**Defendants/Respondents.**

**No. 63575.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 23, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 11, 1994.

Application to Transfer Denied
Feb. 22, 1994.

___

John C. Scully, Springfield, VA, Thomas M. Hanna, St. Louis, for plaintiffs, appellants.

Bruce C. Cohen, Mark J. Rubinelli, St. Louis, for defendants, respondents.

GRIMM, Presiding Judge.

This case involves a matter of first impression for this state.[1] The primary question presented is whether our statutes permit a "fair share" provision to be included in a school board's policy statement concerning working conditions. We hold that the provision is permissible and affirm the trial court's decision.

The St. Louis Board of Education recognizes Local 50, Service Employees International Union, as the exclusive representative of board's custodial and food service employees. Although board employs plaintiffs as either custodians or food service workers, they are not union members.

Under board's policy statement, plaintiffs are required to pay their fair share of union's expenses in the "meet and confer process, policy statement administration and [the union's pursuit of] matters affecting wages, hours and conditions of employment." Plaintiffs do not contest the computation of the fair share cost.

Rather, in the trial court, plaintiffs brought a declaratory judgment action against board and union seeking to invalidate the clause entirely. They alleged the fair share provision violated § 105.510[2] relating to public employees collective bargaining and § 432.-030 concerning wage assignments. Defendants' filed summary judgment motions, which were granted.

Plaintiffs appeal, raising four points. They allege the trial court erred in granting the summary judgment motions because the fair share provision (1) compels non-union members to become financial-core members of union in violation of § 105.510, (2) indirectly compels membership in union in violation of § 105.510, (3) is an unlawful delegation of legislative power to union, and (4) is an illegal wage arrangement under § 432.030.

## I. Background

Missouri public employee labor relations are governed by §§ 105.500–.530. With certain exceptions not applicable here, employ-ees "of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing." Section 105.510. The majority of board's custodians and food service workers selected union as the "exclusive bargaining representative" for all of board's custodians and food service workers; board so recognized union. See § 105.500(2).

Union, as authorized by § 105.510, presented proposals to board concerning salary, benefits, and other conditions of employment. Following discussions, board adopted a written "Policy Statement" relating to working conditions for all of board's custodians and food service employees. It included a fair share provision. This provision pertains to custodians and food service workers who are employed in the bargaining unit represented by union, but who are not union members. It states in pertinent part:

> Every employee included in the appropriate unit who is not a member of the Union will be required to contribute a fair share for services rendered by the Union as the exclusive representative of all the employees in the unit. The Union will certify to the Board the amount constituting the non-members' proportionate share of the costs of the meet and confer process, policy statement administration and pursuing matters affecting wages, hours and conditions of employment, but not to exceed the amount of dues uniformly required of members. Upon the appropriate request for deductions submitted to the Board from the Union on behalf of all of the non-member employees represented by the Union, the proportionate share payment shall be deducted by the Board from the wages of non-member employees and paid to the Union, not less than once every thirty (30) days.

In August, 1990, union sent a letter to plaintiffs which explained the fair share pro-

---

1. In *Strunk v. Hahn*, 797 S.W.2d 536, 543 (Mo. App.S.D.1990), the issue was raised but not reached.

2. All statutory references are to RSMo 1986, unless otherwise indicated.

vision. Also, it stated that membership in union was not required.

In response to the letter, plaintiffs notified board and union of their objection to deduction of fees without their consent. In October, 1990, board began making deductions from plaintiffs' salaries pursuant to the policy statement.

## II. Fair Share Provision

We consider plaintiffs' first and second points together. Plaintiffs contend that the fair share provision violates § 105.510. Specifically, they claim such a fee (1) compels "nonmembers to become financial core members" or (2) "at a minimum indirectly compels membership in the union."

Here, the fair share provision calls for deduction of a "proportionate share of the costs" associated with collective bargaining, rather than the full amount of union dues. A fair share provision:

> defines the amount of the fee as the actual (pro rata) costs of the union's services rather than union dues.... [T]he fair share arrangement compensate[s] the union for providing, as required under its duty of fair representation, full and equal protection to all employees in the bargaining unit, regardless of union membership status. (footnotes omitted).

Zwerdling, *The Liberation of Public Employees: Union Security in the Public Sector*, 17 B.C.Indus. & Com.L.Rev. 993, 1008 (1976).

The rationale supporting fair share provisions is the elimination of "free riders." Free riders are "employees who receive the benefits of union representation but are unwilling to contribute their fair share of financial support to such union...." *NLRB v. Gen. Motors Corp.*, 373 U.S. 734, 743, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670, 676 (1963).

This policy was further stated in *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 221–22, 97 S.Ct. 1782, 1792–93, 52 L.Ed.2d 261, 275–76 (1977). In that case, the Court stated:

> The designation of a union as exclusive representative carries with it great responsibilities. The tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones. They often entail expenditure of much time and money. The services of lawyers, expert negotiators, economists, and a research staff, as well as general administrative personnel, may be required. Moreover, in carrying out these duties, the union is obliged "fairly and equitably to represent all employees ..., union and nonunion," within the relevant unit. A union-shop arrangement has been thought to distribute fairly the cost of these activities among those who benefit, and it counteracts the incentive that employees might otherwise have to become "free riders"—to refuse to contribute to the union while obtaining benefits of union representation that necessarily accrue to all employees.

*Id.* at 221–22, 97 S.Ct. at 1792–93 (footnote and citations omitted).

■ We now turn to whether our statutes permit fair share provisions. We do not find any express language permitting or prohibiting fair share provisions. However, we find implicit authority for them in § 105.520, which provides:

> Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives *shall* meet, confer and discuss such proposals relative to salaries and *other conditions of employment*.... (emphasis added).

This section makes salaries and other conditions of employment mandatory areas of discussion. Our statutes do not define "other conditions of employment." However, the Missouri Supreme Court has stated Missouri's statutory process of "conducting negotiations resembles the procedures available under the federal labor relations statutes." *See Parkway Sch. Dist. v. Local 902/MNEA*, 807 S.W.2d 63, 67 (Mo.banc 1991). Therefore, federal authority is persuasive for our interpretation of § 105.520.

The National Labor Relations Act compels collective bargaining with "respect to rates of pay, wages, hours of employment, or *other conditions of employment*...." 29 U.S.C.

§ 159(a) (1973) (emphasis added). Federal courts have held that provisions having the effect of the fair share provision here are properly considered "conditions of employment" and must be bargained for. *See NLRB v. W.T. Grant Co.*, 199 F.2d 711, 712 (9th Cir.1952); *Local 164, Bhd. of Painters v. NLRB*, 293 F.2d 133, 137 (D.C.Cir.1961); *NLRB v. Bricklayers & Masons Int'l Union*, 405 F.2d 469, 470 n. 1 (9th Cir.1968).

Further, at oral argument, plaintiffs' counsel acknowledged that a clause like the fair share provision here is a condition of employment. He said, "There is no question that they are conditions of employment, but it's a condition of employment that is very different than, say, you get more vacation or working hours."

Also, other state courts have concluded that clauses having the effect of a fair share provision are included within the term "working conditions." *See Rae v. Bay Area Rapid Transit, Etc.*, 114 Cal.App.3d 147, 170 Cal.Rptr. 448 (1980); *Fort Wayne Educ. Ass'n, Inc. v. Goetz*, 443 N.E.2d 364 (Ind.Ct. App.1982).

We conclude that the fair share provision is included within the term "other conditions of employment." This conclusion is consistent with federal precedent and other states' interpretations of similar statutes.

 Having said this, it is clear that union is bound by statute to represent every employee within the bargaining unit. *See* §§ 105.500–.530. Therefore, following *Abood's* rationale, it would be inequitable to permit plaintiffs to benefit from union's services without requiring them to bear a fair and just share of the financial burden.

We now turn to plaintiffs' argument that the fair share provision compels "non-members to become financial core members" or "at a minimum indirectly compels membership in the union" in violation of § 105.510. This section states in relevant part:

Employees, ... shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing. No such employee shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any such employee to *join or refrain from joining* a labor organization,.... (emphasis added).

Here, the fair share provision did not coerce or compel (1) membership in union, or (2) payment of union dues. Instead, it called for plaintiffs to pay a "proportionate share of the costs of the meet and confer process, policy statement administration and pursuing matters affecting wages, hours and conditions of employment...."

This limitation distinguishes this case from many of those relied on by plaintiffs. *See e.g. Smigel v. Southgate Community School Dist.*, 388 Mich. 531, 202 N.W.2d 305, 308 (1972) (Clause "makes no effort to relate the non-members' economic obligations to actual collective bargaining expenses."); *Churchill v. S.A.D. No. 49 Tchrs. Ass'n*, 380 A.2d 186, 192 n. 5 (Me.1977) (Court does "not intimate what our decision would be if ... [non-union members had to pay] only their proportionate share of the costs of securing the benefits conferred upon all members of the bargaining unit."); *City of Hayward v. United Public Emp., Loc. 390, etc.*, 54 Cal.App.3d 761, 126 Cal.Rptr. 710, 714 (1976) (Statute gave employees right to "refuse to join or participate." "Forced payment of dues or their equivalent is, at the very least, 'participation.'")

Moreover, a provision similar to a fair share provision has been sanctioned by the United States Supreme Court. *See Ellis v. Brotherhood of Ry., Airline and S.S. Clerks*, 466 U.S. 435, 447, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428, 441 (1984) (There is "no constitutional barrier ... insofar as the agreement required every employee in the unit to pay a service fee to defray the costs of collective bargaining, contract administration, and grievance adjustment.") (citing *Abood*, 431 U.S. 209, 97 S.Ct. 1782 (1977)).

Further, states are free to invalidate provisions such as the one before us. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S.

746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *see* La.Rev.Stat.Ann. § 23:983 (1985) ("No person shall be required, as a condition of employment, to become or remain a member of any labor organization, or to pay any dues, fees, assessments, or other charges of any kind to a labor organization."). Again, much of plaintiffs' support for their position relies on cases from such states. *See e.g. Ficek v. International Bhd. of Boilermakers, etc.,* 219 N.W.2d 860 (N.D.1974); *Florida Educ. Ass'n v. Public Emp. Relations,* 346 So.2d 551 (Fl. Ct.App.1977).

■ However, Missouri has not invalidated such provisions. Section 105.510 merely prohibits conduct that "directly or indirectly, by intimidation or coercion, compel[s] ... [an] employee to join or refrain from joining a labor organization...." This section contains no prohibition against requiring the payment of fair share fees to unions which are properly designated as the "exclusive bargaining representative." Therefore, the fair share provision does not violate § 105.-510. Points denied.

### III. Delegation of Legislative Power

■ For their third point, plaintiffs contend that the trial court erred in granting summary judgment because the fair share provision "is an unlawful delegation of legislative power to a labor union in that it permits a labor union to determine the amount of the fee charged to employees." Plaintiffs rely primarily on *City of Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539 (Mo. banc 1947).

Plaintiffs' reliance is misplaced. In *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 41 (Mo.Div. 1 1969), the court discussed the public employees labor relations act contained in §§ 105–500 et seq. It stated:

> The act does not constitute a delegation or bargaining away to the union of the legislative power of the public body, and therefore does no violence to *City of Springfield v. Clouse,* [citation omitted] because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched. The public employer is not required to agree but is

required only to "meet, confer and discuss."

*Id. See also Sumpter v. City of Moberly,* 645 S.W.2d 359, 361–62 (Mo. banc 1982).

Here, during discussions on the fair share proposal, union presented board with "explanations of the nature and operation of fair share fee provisions...." Also, union provided board with its "own internal fair share objection appeals procedures."

Following the discussions, board voted to approve the fair share proposal. The proposal was then incorporated into board's policy statement.

The record establishes that union and board followed the procedure required by § 105.520. Moreover, union does not determine the fair share fee. Instead, it submits proposals to board, who is then free to adopt, modify, or reject these proposals. Nothing in the fair share provision limits board's discretion to determine whether union's proposals are appropriate. Point denied.

### IV. Wage Assignment

For their fourth point, plaintiffs contend that the trial court erred in granting summary judgment because the "deduction of fair share fees from [plaintiffs'] wages without their written authorization" violates § 432.030.

Section 432.030 states:

> All assignments of wages, salaries or earnings must be in writing with the correct date of the assignment and the amount assigned and the name or names of the party or parties owing the wages, salaries and earnings so assigned; and all assignments of wages, salaries and earnings, not earned at the time the assignment is made, shall be null and void.

■ An assignment is a *voluntary* act between an assignor and assignee. *Farmers Ins. Co., Inc. v. Effertz,* 795 S.W.2d 424, 426 (Mo.App.W.D.1990). "It divests the assignor of all interest in the thing assigned, and vests the same in the assignee." *Id.*

■ Here, the mandatory wage deduction, pursuant to the fair share provision, is not a

voluntary act. Instead, it occurs automatically to prevent the problem of "free riders."

 Further, the "purposes of Section 432.030 are to 'protect ... the unfortunate and improvident from the unscrupulous and overreaching,' and 'to protect wage earners against their own recklessness and from ... dishonest money lenders.'" *Brinley v. Karnes,* 595 S.W.2d 465, 467 (Mo.App.E.D. 1980) (citations omitted); *see also General American Life Ins. Co. v. Isabell,* 523 S.W.2d 616, 618 (Mo.App.E.D.1975). The policy behind § 432.030 is inapplicable to this case. The deductions of fair share fees are not "assignments of wages" within the meaning of § 432.030. Point denied.

The trial court's judgment is affirmed.[3]

CARL R. GAERTNER and AHRENS, JJ., concur.

---

**3.** Respondents' motion to strike portions of appellants' brief was ordered taken with the case.