INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, Respondent,

v.

Timothy MOON, et al., Appellants.

Nos. WD 73811, WD 73847.

Missouri Court of Appeals, Western District.

Feb. 7, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2012.

Application for Transfer Denied May 29, 2012.

George Kapke, Lee's Summit, MO, for Appellants.

Scott Brown, Kansas City, KS, for Respondent.

Before: ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

THOMAS H. NEWTON, Judge.

Mr. Timothy Moon, Mr. Lawrence Jones, and Mr. Joseph Robinette, employees of the Metropolitan Ambulance Services Trust (MAST) (hereinafter MAST Employees) appeal from the trial court's summary judgment in favor of the International Association of Fire Fighters (IAFF), Local No. 42 (hereinafter Local 42). Local 42 sought judgment to enforce fines it levied against the MAST Employees for organizing a rival union, Emergency Medical Service Workers (EMSW), in contravention of the IAFF Constitution. We affirm in part, reverse in part, and remand.

## Factual and Procedural Background

Prior to 2005, employees of MAST were represented by Local I–34 of the IAFF. In 2005, the IAFF President ordered the merger of Local I–34 into Local 42 by Executive Order. The merger resulted in litigation that led to a court-ordered settlement. Employees of MAST were told they had the option to be "nonmembers" of the union, but would still be obligated to pay a monthly union service fee. As of 2005, the fee was reported to be 71.46% of the full union dues rates, or $35.72 per month.

In 2006, EMSW was formed and incorporated as a Missouri union. It petitioned to become the bargaining agent for the employees of MAST. The IAFF declared EMSW a "rival organization."

Mr. Jones began working for MAST in 1979. In September 1980, he joined IAFF, signing a dues and payroll deduction authorization card. After Local I–34 was merged with Local 42, Mr. Jones became president and a founding member of EMSW, whose purpose he stated was to decertify Local 42 as the exclusive bargaining agent for the employees of MAST. On October 31, 2006, Mr. Jones withdrew from Local 42 by opting to pay a service fee instead. In a November 2009 deposition, he acknowledged that his conduct violated the IAFF Constitution as it "is written."

Mr. Moon began working for MAST and joined Local I–34 of the IAFF in 1998. Mr. Moon was also a founding member of EMSW; he served as a steward of EMSW and admitted that its purpose was to form its own representation for employees of MAST. As of November 2009, when his deposition was taken, Mr. Moon was still a member of Local 42 of the IAFF.

Mr. Robinette became a member of IAFF in July 1987. Mr. Robinette stated that the merger "was not a voluntary action." He explained, "No one voted it in from our Union." Consequently, he felt he was forced to be a member. He testified that he understood he could also have been a "non-core member" and agreed he was subject to the IAFF Constitution and by-laws. On October 17, 2006, Mr. Robinette became a service fee payer instead of a full union member.[1]

As a result of EMSW's activities, the President of Local 42 filed internal charges against eleven MAST employees, including Mr. Moon, Mr. Jones, and Mr. Robinette. The charges alleged that, *inter alia*, from June 26, 2006, up to and through Septem-

---

1. In his internal appeal to the union president, Mr. Robinette argued he withdrew from the union as of August 3, 2006. However, the record shows he authorized a service fee pay-roll deduction on October 17, 2006, and in his reply to Local 42's motion for summary judgment, Mr. Robinette agreed this was the date he resigned his union membership.

ber 22, 2006, Mr. Jones, Mr. Moon, and Mr. Robinette violated the IAFF Constitution "by advocating and encouraging members of IAFF Local 42 to decertify IAFF Local 42 in favor of [EMSW]" as a rival union and "by purporting to be supporters, members and/or leaders of [EMSW]." The charges further stated that they undertook a campaign and that IAFF's defense against the campaign "resulted in the expenditure of financial and other resources on the part of the IAFF and Local 42, which could have been conserved and/or better spent in representation of the interest of the members of Local 42."

An internal hearing was held through a Union Trial Board in April 2007. Mr. Moon initially moved to dismiss the charges, alleging that he was not a member of the union during the alleged dates; the Trial Board rejected his claim.[2] Mr. Moon, Mr. Jones, and Mr. Robinette attended and testified at the hearing.

The Trial Board issued a decision finding the MAST Employees guilty of the charges. It concluded that Local 42 had incurred $97,025.33 in expenses in defending against the EMSW "Events" and ordered each of the eleven charged members to pay $8,820.48.[3]

The MAST Employees filed appeals to the IAFF President in May and June of 2007. The President determined that since the IAFF Constitution only permitted appeals by members in good standing, Mr. Jones and Mr. Robinette could not appeal from the Trial Board's decision. He further denied Mr. Moon's appeal as having a "lack of evidentiary basis" for his argument of "irreparable harm."

In February 2009, Local 42 filed a petition in circuit court against the MAST Employees "in [the] nature of breach of contract" seeking judicial enforcement of the levied fines. In April 2010, Local 42 moved for summary judgment. It contended that each of the MAST Employees was a member of IAFF and Local 42 "at all times material" to its action, that the relationship between the union and its members was a contract, and that by virtue of the contract, the MAST Employees were bound by the provisions of the IAFF Constitution. The MAST Employees argued in reply, *inter alia*, that membership in Local 42 was a compulsory condition of employment, that the IAFF Constitution violates Missouri and federal law, and that union membership could not compel them to waive their statutory and constitutional rights to organize.

In judgments entered September 22, 2010, and March 15, 2011, the trial court granted summary judgment in favor of Local 42. It found that the MAST Employees' actions were not constitutionally protected because the right to freedom of speech only protects against state action and Local 42's discipline was not state action. The trial court also characterized the MAST Employees conduct as dual unionism and found it not protected by Missouri or federal law.[4] The MAST Employees appeal.

### Standard of Review

Our review of the trial court's grant of summary judgment is essentially *de novo*. *Int'l Bhd. of Elec. Workers, Local Union No. 53 v. City Power & Light Dep't, City*

---

2. At the trial court, Mr. Moon's membership in Local 42 was established by an admission in pleadings.

3. Additional punishments were imposed or recommended by the Trial Board that are not relevant to our discussion here.

4. The trial court also granted Local 42 summary judgment as to the MAST Employees' counterclaim for prima facie tort because the MAST Employees' response failed to comply with Rule 74.04. The MAST Employees do not contest this ruling on appeal.

*of Independence, Mo.,* 129 S.W.3d 384, 386 (Mo.App. W.D.2003). We review the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id.* Summary judgment is proper "only if 'the motion, the response, [and] the reply ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting Rule 74.04(c)(6)).

## Legal Analysis

In their sole point on appeal, the MAST Employees contend the trial court erred in granting summary judgment to Local 42 because: (1) their right to organize a labor union was guaranteed by Missouri and U.S. constitutional law; (2) Local 42's petition was deficient; and (3) they were denied their rights to judicial review of the fines.[5]

### The Mast Employees' Right to Organize a Rival Union: Missouri Law

■ The MAST Employees argue that the trial court erred in granting summary judgment to Local 42 on its petition to enforce the levied fines because their right as public employees to organize a labor organization is guaranteed by the Missouri Constitution, Article I, section 29, and the Revised Statutes of Missouri, section 105.510.[6]

The IAFF Constitution provides that it governs the "officers, subordinate bodies and members" of the IAFF. Article XV, Section 1, "Misconduct and Penalties" of the IAFF Constitution states:

[A]ny officer or member of the Association, or of any local union ... after

charges, trial, and conviction ... may be reprimanded, fined, removed from office, suspended, or expelled as the evidence and circumstances may warrant in the judgment of the officer or officers or legally constituted tribunal by whom he/she is tried as hereafter provided....

The section defines "misconduct" to include "[a]dvocating or encouraging any labor or any other rival organization, or acquiring or maintaining membership in any such organization." Thus, it was through the authority of these constitutional provisions that Local 42 levied the fines against the MAST employees.

■ We do not find trial court error. The relationship between a union and its members is contractual. *Farrar v. Messmer,* 368 S.W.2d 933, 936 (Mo.App.1963). "The constitution, rules, and by-laws of the association ... constitute the contract." *Robinson v. Nick,* 235· Mo.App. 461, 136 S.W.2d 374, 387 (1940). The right to discipline arises from the membership agreement between the union and its members. *Atkins v. McPhetridge,* 213 S.W.3d 116, 121–122 (Mo.App. S.D.2006). Because the relationship is contractual, "[u]nions may resort to courts for enforcement of disciplinary provisions." *Id.*

■ Here, the MAST Employees were not required to be members of the union and thus chose to be bound by the IAFF Constitution and bylaws. Although their briefing contends that membership in Local 42 was not voluntary because it was a condition of their employment, the agreement between Local 42 and MAST clearly provides for employees to opt out of core

---

**5.** Local 42 suggests we should dismiss the MAST Employees' appeal for failure to comply with Rule 84.04. We agree that the brief fails to comply with Rule 84.04 by precisely identifying the alleged points of trial court error. *See Atkins v. McPhetridge,* 213 S.W.3d 116, 119 (Mo.App. S.D.2006). However, be-

cause we can discern the thrust of the arguments, we exercise our discretion to address the brief on its merits. *See id.* at 120.

**6.** Unless otherwise indicated, statutory references are to RSMo 2000.

membership. In fact, subsequent to the events at issue, both Mr. Robinette and Mr. Jones chose to withdraw from the union. *Article 5 Union Security,* Paragraph 5.1 Union Security, of the agreement provides:

> All employees covered by this Agreement shall, as a condition of continued employment by the Employer, become members of the Union on or before the 30th day following the beginning of employment, or the effective date of this Article whichever is later, and shall continue their membership in the Union during the term of this Agreement *Employees who elect not to become core members of the Union with full internal Union rights and responsibilities shall, as a condition of continued employment by the Employer, pay to the Union a service fee* equal to the percentage of the Union's regular dues and initiation fees used to defray the costs and expenses incurred by the Union in fulfilling its legal duty to act as the exclusive collective bargaining representative for all employees in the bargaining unit.

A provision such as this permitting an employee to opt out of union membership though still requiring a *pro rata* fee is known as a "fair share" provision.[7] "Fair share" provisions do not compel or coerce union membership, but rather address the problem of free riders by requiring an employee to pay for a proportionate share of the benefits of the union's collective representation of the employees. *Schaffer v. Bd. of Educ. of City of St. Louis,* 869 S.W.2d 163, 166 (Mo.App. E.D.1993).

■ Consequently, because of their union membership, the MAST Employees were contractually bound to abide by the IAFF Constitution and bylaws and agreed to its internal disciplinary procedures. Unions may validly impose discipline of their members and "due to the contractual nature of the relationship," the courts will enforce those measures, provided they are reasonable. *Atkins,* 213 S.W.3d at 121–22.

■ The MAST Employees, however, appear to contend that Missouri law protects their right to organize a rival union as against the IAFF Constitution. The parties do not dispute that the MAST Employees are public employees. Section 105.510 provides in relevant part that public employees (with exceptions):

> shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment *through the representative of their own choosing.* No such employee shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any such employee to join or refrain from joining a labor organization.

(Emphasis added).

Article I, section 29 of the Missouri Constitution applies to both private and public employees, and similarly provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." *See Independence–Nat'l Educ. Ass'n v. In-*

---

**7.** In *Schaffer v. Board of Education of City of St. Louis,* the court explained that:

> [a] fair share provision defines the amount of the fee as the actual (pro rata) costs of the union's services rather than union dues.... [T]he fair share arrangement compensate[s] the union for providing, as re-

quired under its duty of fair representation, full and equal protection to all employees in the bargaining unit, regardless of union membership status.

869 S.W.2d 163, 166 (Mo.App.E.D.1993) (internal quotation marks and citation omitted).

*dependence Sch. Dist.*, 223 S.W.3d 131, 133, 137 (Mo. banc 2007) (overruling prior case law excepting public employees from the constitutional protection).

The MAST Employees argue that the union's imposition of fines is invalid because these provisions of Missouri law "assure public sector employees the right to organize and bargain collectively." In addressing this argument, the trial court looked at two federal cases addressing challenges to unions' imposition of discipline on members who engaged in dual unionism: *Ferguson v. International Association of Bridge, Structural and Ornamental Iron Workers*, 854 F.2d 1169, 1175 (9th Cir.1988) and *Sawyers v. Grand Lodge, International Association of Machinists*, 279 F.Supp. 747, 755–56 (D.C.Mo. 1967). In *Ferguson*, the Ninth Circuit rejected the union members' argument that they could not be disciplined for dual unionism that also involved asserting free speech. The *Ferguson* court specifically held, "the appellants' conduct—dual unionism and the speech incident thereto—is subject to reasonable discipline under section 101(a)(2) [of the Labor–Management Reporting and Disclosure Act (LMRDA) ]." 854 F.2d at 1175. The *Sawyers* court rejected union members' claims that their engagement in dual unionism was protected by the LMRDA or the National Labor Relations Act (NLRA). 279 F.Supp. at 756. Of course, neither case dealt with Missouri law. In a somewhat conclusory fashion, the trial court in the instant case discussed the holdings of these cases; cited *Schaffer*, 869 S.W.2d at 166, for the proposition that the federal cases were persuasive authority; and then stated its finding that Local 42 was entitled to discipline the MAST Employees for dual unionism.

In *Schaffer*, the Eastern District reasoned:

[T]he Missouri Supreme Court has stated Missouri's statutory process of 'conducting negotiations resembles the procedures available under the federal labor relations statutes.' *See Parkway Sch. Dist. v. Local 902/MNEA*, 807 S.W.2d 63, 67 (Mo. banc 1991). Therefore, federal authority is persuasive for our interpretation of § 105.520.

869 S.W.2d 163, 166 (Mo.App. E.D.1993). It is not clear, however, that *Schaffer* provides blanket authority for applying all federal labor law to interpret Missouri labor law.

Further, it is unclear that *Ferguson* and *Sawyers* are directly on point as to the issues before us. For example, the Missouri Supreme Court has specifically noted that although the NLRA grants all employees a right to "bargain collectively through representatives of their own choosing," the NLRA does not apply to employees of a state or public subdivision of a state (i.e. public employees). *Independence–Nat. Educ. Ass'n*, 223 S.W.3d at 139 (internal quotation marks and citation omitted). Because the NLRA pre-dated Missouri's adoption of Article I, section 29, the Missouri Supreme Court reasoned that the constitutional provision was enacted to give broader protections to the right to bargain collectively than those available under federal law, as well as to protect those rights even in the absence of federal protection. *Id.* Given these clear statements distinguishing federal and state labor laws, it appears inadequate to rely solely on *Ferguson* and *Sawyers* to determine whether Missouri law bars a union from disciplining its members for dual unionism. Moreover, in addition to interpreting a different statutory scheme, both *Ferguson* and *Sawyers* dealt with private employees: "[u]nquestionably, public employees are differently situated from private employees and are treated differently

under the law." *Independence–Nat. Educ. Ass'n*, 223 S.W.3d at 133.

We do, however, recognize these cases as persuasive and our further review does not lead us to conclude that section 105.510 and Article I, section 29 bar a union from reasonable discipline of its members for engaging in dual unionism. First, a plain reading of section 105.510 and Article I, section 29 suggests that they were enacted primarily to protect the employees' rights as against the employer or against the state, rather than as against their bargaining representative. *See generally Independence–Nat. Educ. Ass'n*, 223 S.W.3d at 136–38 (discussing Article I, § 29 and RSMo § 105.510); *Quinn v. Buchanan*, 298 S.W.2d 413, 417 (Mo. banc 1957) (stating that Article I, § 29 is part of the Missouri Constitution's Bill of Rights, which is primarily a limitation on government). Second, while these provisions recognize the rights of the MAST Employees to the representatives of their own choosing, the MAST Employees chose their representation when they became IAFF members and remained IAFF members. Third, the law seeks to strike a balance and recognizes the importance of preserving the union's ability to protect itself with reasonable restrictions, to bargain effectively and to not be undermined by its own members. In addition to federal law finding internal discipline against union members for dual unionism valid, the weight of state authority supports permitting unions to enact restrictions against dual unionism and to impose reasonable discipline for those members who engage in it-provided union membership is not a compulsory condition of employment. For example, in *Calabrese v. Policemen's Benevolent Association Local No. 76, Inc., of Springfield Township,* the New Jersey Superior Court opined:

> The advocacy of dual unionism and sponsorship or creation of a rival organization has been held to be activity clearly in violation of membership responsibilities and disrupture of contractual relations; otherwise the members could campaign against the union while remaining a member and, therefore, privy to the union's strategy and tactics. That such discipline might result in termination of pension or similar benefits has not been found to invalidate the union's action.

157 N.J.Super. 139, 384 A.2d 579, 587 (N.J.Super. Ct. Law Div.1978) (citing a string of cases); *see also, e.g., Anderson v. Los Angeles Cnty. Emp. Relations Comm'n*, 229 Cal.App.3d 817, 280 Cal. Rptr. 415 (Cal.Dist.Ct.App.1991) (upholding union discipline against former member who engaged in dual unionism despite statute with language similar to section 105.510 protecting public employees' rights in collective bargaining); *Futterman v. N.Y. State Nurses Ass'n*, 124 Misc.2d 693, 477 N.Y.S.2d 255, 257 (N.Y.Sup.Ct.1984) ("[G]eneral principles of fairness would dictate, at minimum, that a voluntary association such as a labor union be permitted, as a matter of self preservation, to expel from its membership an officer who works to certify a rival union as the exclusive bargaining agent for the employees in the bargaining unit") (internal citation omitted).

We do not address the case of an employee who has opted out of union membership, then campaigned against the representative union. As noted by the *Anderson* court, "[O]ne of the primary obligations of the membership is not to seek the very destruction of the union by engaging in dual unionism." 280 Cal.Rptr. At 421. For the foregoing reasons, we do not find that IAFF was barred from seeking to enforce its internal discipline through an action for breach of contract.

### Sufficiency of Local 42's Petition

■ The MAST Employees further argue that the trial court erred in granting summary judgment because Local 42's petition was deficient in that it failed to state a cause of action in that Local 42 did not allege that it performed its contract with the MAST Employees. Local 42 contends it was not required to plead performance and that the cases cited by the MAST Employees concern "garden variety" contracts rather than cases concerning labor law.

■ The law reflects that the relationship between a union and its members is contractual. *See Farrar*, 368 S.W.2d at 936. And it is a relationship "which the court will enforce, if it is not immoral, contrary to public policy or the law of the land, or unreasonable." *Id.* The requirement for pleading contract performance must be viewed in the context of the particular type of contractual relationship involved here. The petition specifically alleged, "The provisions of the [IAFF] Constitution and Local 42's Constitution and Bylaws constitute a contract." Local 42 further alleged it was a labor organization serving as the exclusive bargaining representative for MAST employees and that the MAST Employees were members at all times material to the case. The petition additionally alleged that fines had been imposed against the MAST Employees pursuant to the procedures specified in the union's constitution and other governing documents. This pleading was sufficient to allege Local 42's performance of the contract.

### Constitutionality of Internal Union Discipline

■ The MAST employees further contend that their constitutional rights to freedom of speech, association, and assembly were violated. The trial court rejected their argument that their constitutional rights were violated because the case does not involve actions by the state or federal government. It is undisputed that while MAST, the employer, is a public entity, Local 42 is not. Without citation, on appeal the MAST employees assert that under "the state action doctrine," Local 42 was a state actor.

> [A]n appellant is required to provide relevant and available legal authority in the argument or explain why such authority is not available. Having provided such authority, the appellant must explain in the argument why, in the context of the case, the law supports the claim of reversible error. If an appellant fails to support his or her claim of error beyond mere conclusions, the point is considered abandoned.

*Moseley v. Grundy Cnty. Dist. R–V Sch.*, 319 S.W.3d 510, 513 (Mo.App. E.D.2010). Having failed to provide legal authority for its argument, the MAST Employees would place us in the position of performing its research; we may not take on the role of an advocate for a party. *See Chastain v. Kansas City Mo. City Clerk*, 337 S.W.3d 149, 158 (Mo.App. W.D.2011).

■ Further, we find no basis for the MAST Employee's assertion that Local 42 is a state actor. The First Amendment is made applicable to the states through the Fourteenth Amendment. *Oliver v. State Tax Comm'n of Mo.*, 37 S.W.3d 243, 248 (Mo. banc 2001). "The Fourteenth Amendment applies to acts of the states, not to acts of private persons or entities, and is only offended by action of the state." *Mottl v. Mo. Lawyer Trust Account Found.*, 133 S.W.3d 142, 146 (Mo. App. W.D.2004). State action occurs where "(1) an alleged constitutional deprivation is caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is

responsible" and (2) the person allegedly causing the deprivation is a state actor. *Grinnell Mut. Reinsurance Co. v. Walters,* 194 S.W.3d 830, 832 (Mo. banc 2006).

As noted by Local 42, the Seventh Circuit recently addressed this issue in *Hallinan v. Fraternal Order of Police of Chicago Lodge No., 7,* 570 F.3d 811, 816 (7th Cir.2009). There, the court found that a state employer's relationship with a union serving as the sole bargaining representative could *implicate* the state action doctrine, particularly if membership were compulsory. *Hallinan,* 570 F.3d at 816. However, it determined that "union actions taken pursuant to the organization's own internal governing rules and regulations are not state actions," absent some other aspect of the relationship that would turn "generally private conduct into state action" such as the union acting in collusion with the state employer, or with powers delegated to it by the state. *Hallinan,* 570 F.3d at 817.

■ Finally, the MAST Employees further argue that under the United States Supreme Court's decision in *Shelley v. Kraemer,* this court "cannot be used to enforce the taking of life, liberty or property by a private individual in such a way that deprives the Appellants of constitutionally protected rights and freedoms." 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). We note that the MAST Employees fist argue that the union is a state actor, and second argue that the union is a "private individual," without suggesting that these arguments are in the alternative.

Regardless, we also reject this argument. As discussed above, and cited to numerous cases above, the union is entitled to impose reasonable discipline on its members for action in violation of its constitution and bylaws and is entitled to seek judicial enforcement of its reasonable disciplinary measures through a breach of contract action. *See, e.g., Atkins,* 213 S.W.3d at 121–22. A union's prohibition against dual unionism by its members does not deprive the members of constitutionally protected rights and freedoms, but rather effects a valid contractual term. A long line of authority previously set forth in this opinion upholds the validity of internal union discipline of its members, provided union membership is not compulsory. *Shelley* is inapposite.

### Reasonableness of Fines Evading Judicial Review

■ Finally, the MAST Employees additionally contend that the trial court's grant of summary judgment denied them the opportunity to have judicial review of the fines imposed by Local 42 and that they seek to challenge the reasonableness of the fines.[8]

■ For the fines to be reasonable, Local 42 was required to show that it "sustained damages in the amounts of the fines assessed by the trial board." *See Atkins,* 213 S.W.3d at 122. In the circumstances of this case, we cannot find that Local 42 was entitled to entry of summary judgment of $8,820.48 against each MAST Employee. In the documentation of expenses Local 42 provided in support of its motion for summary judgment, the "Description of Expenses," Local 42 did not establish its entitlement. The check dates to attorneys and consultants range from June 20, 2006, to February 1, 2007. The "Misc. Expenses" range from August 5, 2006, to September 22, 2006. "Payroll Ex-

8. Although Local 42 argues that this claim was not preserved, the MAST Employees challenged Local 42's right to collect the fines assessed, and it was Local 42's burden to establish the reasonableness of the fines imposed. In these circumstances, we deem the issue adequately preserved.

penses" are listed from March 28, 2005, through September 22, 2006. "Executive Board Payroll Expenses" are listed from "April 1 to October 31" with no year specified.

There are two reasons why Local 42's summary judgment motion does not support the total judgment entered in its favor. First, the charges against the MAST Employees alleged that they violated the IAFF Constitution from June 26, 2006, through September 22, 2006. However, the fines levied against them appear to represent expenses incurred by the union both before and after these dates. Second, it appears that Mr. Jones and Mr. Robinette were assessed fines for Local 42's expenses *after* they withdrew from Local 42 membership by opting to pay the service fee in lieu of membership. Local 42 bears the burden of establishing the justification for enforcing these fines as a contractual matter when Mr. Jones and Mr. Robinette were no longer parties to the contract. We find this troubling when their subsequent non-membership provided the basis for IAFF's refusal to consider their internal appeals. Because summary judgment is not appropriate unless the plaintiff shows "by unassailable proof that there is no genuine issue of fact and that it is entitled to recovery as a matter of law," we reverse the trial court's grant of summary judgment to Local 42 as to the amount of the fines imposed. *Signature Pool & Court, a Div. of Classic Pools, Inc. v. City of Manchester,* 743 S.W.2d 538, 540 (Mo.App. E.D.1987). We remand to the trial court for determination as to whether the fines are reasonable and supported by sufficient evidence. *See Atkins,* 213 S.W.3d at 123.

## Conclusion

For the foregoing reasons, we affirm as to the MAST Employees' liability to Local 42, reverse the trial court's order of fine payment, and remand for determination of reasonable fines.

AHUJA, P.J., and WELSH, J. concur.